**WILSON ELSER**
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

John M. Flannery, Esq.
Direct dial: (914) 872-7111
john.flannery@wilsonelser.com

April 10, 2020

**By ECF**

Hon. Vincent L. Briccetti
United States District Court
For the Southern District of New York
300 Quarropas Street
White Plains, NY  10601

**Re**:   Victoria Malone v. Town of Clarkstown, *et al.* Docket No. 19 CV 5503 (VB)
         Our File No.:  12129.00297

Dear Judge Briccetti:

We represent defendants the Town of Clarkstown, Tucker Connington, David Salvo, and Robert Klein (the "Town Defendants") in the above-captioned action.  Pursuant to this Court's April 3, 2020 Order, we write in response to Plaintiff's April 2, 2020 pre-motion letter seeking to compel (1) discovery pre-dating a prior Release executed by Plaintiff in favor of the Town, and (2) discovery from non-party employees' personal electronic devices.  The Town objects to both of Plaintiff's requests.  First, the pre-Release discovery is not relevant to the Plaintiff's claims and is being sought solely for purposes prohibited by the Release.  Second, there is no legal authority whatsoever for Plaintiff's contention that the Town has control of its employees' personal telephones and email accounts.  Plaintiff's demand that the Town search such devices or inquire of non-party employees about the content of their personal devices, where there is no reason to believe that employees use the devices for work purposes or that the devices contain relevant materials, raises serious privacy concerns and must be rejected.

Pre-Release Discovery Is Not Relevant Here

During the course of Plaintiff's 17-years of employment with the Town, there have been three different Highway Superintendents.  From the time Plaintiff was hired through December 2015, Wayne Ballard was the Highway Superintendent.  Defendant Frank DiZenzo was elected in 2015 and served as Highway Superintendent from January 2016 through December 2019.  In January 2020, Bob Milone began his term as the newly elected Highway Superintendent.  According to Plaintiff, she was assigned to the tree crew from approximately 2016 into 2018.  Defendants Robert Klein, David Salvo, and Brian Lillo were on the tree crew with Plaintiff.

In June 2014, Plaintiff filed a grievance alleging that the Town discriminated against her by failing to promote her and instead promoting male employees. DE #75 at ¶30; Ex. A.  In 2016, Plaintiff settled her claim with the Town and entered a Stipulation of Settlement and General Release ("the Release"). Ex. A.  As part of the settlement, the Town agreed to promote Plaintiff "to the position of Motor Equipment Operator II at the top step of the salary schedule" and Plaintiff agreed to a general release of all claims against the Town and its employees as of the date of settlement, April 29, 2016.  *Id*.  Specifically, the Release states:

> 3. In exchange for the consideration recited herein, the sufficiency of which is hereby recognized, Malone fully, forever, irrevocably and unconditionally releases the Town, its elected officials, departments, officers, employees, agents and representatives, past present

1133 Westchester Avenue • White Plains, NY 10604 • p 914.323.7000 • f 914.323.7001

Albany • Baltimore • Boston • Chicago • Connecticut • Dallas • Denver • Garden City • Houston • Kentucky • Las Vegas • London • Los Angeles • Miami
Milwaukee • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Virginia • Washington, DC • West Palm Beach • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Munich • Paris

wilsonelser.com

8215349v.3

>   and future (collectively "Releasees" or "Town") from any and all claims, controversies, liabilities, complaints . . . and damages of whatever kind and nature, whether known or unknown . . . that Malone has had or now has based on any and all aspects of her employment with the Town and/or any terms conditions and/or changes in the terms and conditions of her employment with the Town, including, but not limited to . . . claims under 42 U.S.C. §§ 1983-1988, Title VII of the Civil Rights Act of 1964 . . . the New York State Human Rights Law, . . . ; all claims for civil rights violations, retaliation or violation of public policy, . . . or tort (e.g. assault, battery, intentional or negligent infliction of emotional distress, defamation, constructive discharge . . .), whether based in common law or otherwise; . . . . Malone further agrees to hold the Town harmless from any claims, costs, penalties, and/or liabilities of any type related to her employment with the Town.
>
>   4. Malone acknowledges and agrees that she has been advised to consult with an attorney and she has consulted with her attorney . . . prior to signing this Agreement and that she is entering into this Agreement voluntarily, knowingly and of her free will.

Ex. A.

"Words of general release are clearly operative not only as to all controversies and causes of action which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies." *Tromp v. City of New York*, 465 Fed. Appx. 50, 52 (2d Cir. 2012) (quoting *A.A. Truck Renting Corp. v. Navistar, Inc.*, 81 A.D.3d 674 (2d Dep't 2011)). Here, the language of the Release is clear and unambiguous: Plaintiff waived all federal and state law claims based on conduct occurring prior to April 29, 2016, including hostile work environment claims based on conduct pre-dating the release. The effect of the Settlement and Release was to waive all of Plaintiff's claims and for each party to start from a clean slate moving forward.

Since the commencement of litigation, the Town has maintained that pre-Release materials are not relevant to Plaintiff's remaining claims. *See* DE # 76 at ¶7 (initial scheduling order precluded discovery of pre-Release materials pending resolution of the Town's motion to dismiss). The plain language of the Release establishes that it was knowing and voluntary and bars any claim for much of the conduct alleged in Plaintiff's complaint, and Plaintiff has conceded as such. Indeed, Plaintiff acknowledged the applicability of the Release and dismissed all claims against individual defendants whose alleged conduct pre-dated the date of the Release, including Wayne Ballard. DE #87 (acknowledging that defendants are not liable for acts arising before April 29, 2016 and dismissing with prejudice all claims against Andrew Lawrence, the second highest ranking Highway Department official under Mr. Ballard); DE #83 (stipulation dismissing claims against Mr. Ballard).

Plaintiff waived all pre-Release claims that the Town subjected her to a hostile work environment. Consequently, she cannot rely on alleged misconduct that occurred prior to the Release as a basis for establishing liability for conduct that occurred post-Release. Plaintiff's pre-motion letter makes clear that this is precisely what Plaintiff is trying to do. In the letter, Plaintiff states that she seeks pre-Release discovery to show, inter alia, that the discrimination and harassment she suffered was longstanding, and that her damages were exacerbated. She further states that if the Town would "formally admit that a hostile work environment existed under Superintendent Ballard," then Plaintiff will forego pre-Release discovery. Pl. Let. at n8. Clearly, Plaintiff is attempting to establish the Town's liability for acts that occurred prior to April 29, 2016.

This defeats the purpose of the Stipulation of Settlement and General Release and is contrary to the court's "longstanding adherence to the principle that 'courts are bound to encourage' the settlement of litigation." *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 202 (2d Cir. 2006) (quoting *Gambale v. Deutsche*

*Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004) (enforcement of settlement agreement regarding sex discrimination claims)). One purpose of the Settlement was for the Town to avoid the costs of litigating any claims that may have existed prior to April 29, 2016—including the costs of discovery related to such claims. Ex. A ("WHEREAS, the Town, the CSEA and Malone wish to resolve this matter without the burden and expense of arbitration/litigation"); *see generally*, *In re Shopping Carts Antitrust Litig.*, 1983 U.S. Dist. LEXIS 11555, at *31 (S.D.N.Y. Nov. 18, 1983) ("by the give and take of settlement bargaining, the parties insulate themselves from the possible consequence of an adverse determination. It is essentially to avoid the uncertainties and cost of litigation, followed by the inevitable appeals, and to obtain a prompt resolution of matters which are in issue, that parties to litigation and their counsel enter into such settlement agreements.").

None of the cases cited by Plaintiff concern claims that were affirmatively released as part of a settlement agreement. Rather, all of the cases concern discovery regarding time-barred claims. But these cases are not applicable here. One court to directly address the issue has held that *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) does not apply to claims barred by a settlement agreement, as opposed to the statute of limitations. *Hook v. Regents of the Univ. Of Cal.*, 2007 U.S. Dist. LEXIS 96244 (D.N.M. 2007) (plaintiff's pursuit of pre-release discovery to show continuing course of retaliation violated settlement agreement). For the reasons stated above, there are real and significant differences between claims barred by a negotiated settlement and voluntary general release, and claims barred by the statute of limitations.

Plaintiff does not dispute that the Release is valid and enforceable and that she received valuable consideration for the Release. Because conduct occurring before the date of the Release cannot form the basis for any claim, discovery regarding pre-Release conduct is not relevant. Indeed, for almost the entire period prior to the Release, Wayne Ballard was the Highway Superintendent. Plaintiff has dismissed her claims against Mr. Ballard, and has released the Town from all liability based on his conduct. Any pre-2016 complaints against Mr. Ballard are not relevant to Plaintiff's claim that she was subjected to a hostile work environment while she was assigned to the tree crew between 2016 and 2018, when Mr. DiZenzo was Superintendent. *See Giruzzi v. Blue Cross/Blue Shield*, 1998 U.S. Dist. LEXIS 15589, at *10 (N.D.N.Y. Sep. 30, 1998) (promotion denials did not constitute a series of related acts where the decisions were made by different supervisors).

Permitting Plaintiff to conduct discovery regarding pre-Release complaints against Mr. Ballard would defeat the purpose of the Release and allow Plaintiff to attempt to establish the Town's liability for conduct that Plaintiff knowingly waived. Accordingly, Plaintiff's demand for pre-Release discovery should be rejected.

<u>The Town Is Not In Possession, Custody, or Control of Employees' Personal Devices or Email Accounts</u>

As part of its document production, the Town searched relevant custodians on the Town's email system, and the individual Town defendants searched their personal devices. The Town understands that the separately-represented individual defendants DiZenzo and Lillo also searched their personal devices for responsive documents.[1] Plaintiff argues, however, that all personal devices as well as personal email accounts of the dozens of non-party employees are within Town's control merely because these individuals are employed by the Town. There is no legal support for Plaintiff's argument, and no factual basis to think these non-parties have relevant materials.

---

[1] Additionally, former defendants Ballard and Lawrence responded to third-party subpoenas from Plaintiff. Upon information and belief, they did not have any responsive documents on personal phones or email accounts.

The Town of Clarkstown Highway Department has over 70 employees. As the Town previously explained to Plaintiff, the Town only provides email accounts and cell phones to Highway Department employees at the level of deputy or above (*i.e.* three deputies and the Superintendent of Highways). The Town does not provide email addresses or cell phones to employees below the level of deputy (*e.g.* Machine Equipment Operators and Laborers) because their job duties generally do not involve the use of email or cell phones. As shown in the Town's voluminous production of scheduling documents, the Highway Department daily schedules are printed hard copy and each crew foreman completes a hard-copy paper form concerning crew attendance, equipment used, and work performed. The Highway Department does not use scheduling apps, nor does it expect employees to use their personal phones for work purposes.[2] The fact that an employee may have a personal phone with them at work, does not place that device within the control of the Town.

"A party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain." *Scherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007). Rather, in order for documents to be considered in a party's control for purposes of Federal Rule of Civil Procedure 34(a), a party must have "access and the practical ability to possess documents." *Id.*; *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 530 (S.D.N.Y. 1996) ("A party has 'control' over a document if that party has a legal right to obtain those documents." (internal citation omitted)). The burden of establishing control is on the party seeking the documents. *New York v. AMTRAK*, 233 F.R.D. 259, 268 (N.D.N.Y. 2006) (citing 7 MOORE'S FEDERAL PRACTICE § 34.14[2][b]).

While it is true that court's construe the issue of "control" broadly, none of the cases cited by Plaintiff stand for the proposition that an employer has control over the personal devices of employees where those personal devices are not used regularly for work purposes and where there is no reason to believe the devices contain relevant information. Rather, the cases involve the personal devices of named defendants, high-ranking employees or employees heavily involved in the issue underlying the litigation, or they involved instances where the devices were admittedly used significantly for work purposes and contained relevant materials. *See Chevron Corp. v. Salazar*, 275 F.R.D. 437, 448-449 (SDNY 2011) (emails sent by lawyer's employee from her personal account where the emails were admittedly work-related and the employee did all her work from her Gmail account because the lawyer did not provide her with a work account); *Ronnie Van Zant, Inc. v. Pyle*, 270 F. Supp. 3d (S.D.N.Y. 2007) (where plaintiffs sued alleging that defendant producer's film violated consent order and seeking to permanently enjoin the film, the phone used by the film's director and screenwriter was within the defendant producer's control, even though defendant hired director/writer as an independent consultant); *Alter v. Rocky Point Sch. Dist.*, 2014 U.S. Dist. LEXIS 141020 (E.D.N.Y. Sept. 30, 2014) (general statement that work-related ESI on personal computer of employees, such as school superintendent, should be preserved).

Courts that have considered requests to compel discovery from lower-level employees' personal phones have denied such motions. *See RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*, No. 4:18-cv-06037-DGK, 2019 U.S. Dist. LEXIS 121808, at *10 (W.D. Mo. July 22, 2019) (ordering production of relevant text messages from business and personal phones of named defendants, but denying request to the extent it "seek[s] messages stored on the personal phones of employees other than [the named defendants]"); *Lalumiere v. Willow Springs Care, Inc.*, 2017 U.S. Dist. LEXIS 216041, 2017 WL 6943148, at *2 (W.D. Wash. Sept. 18, 2017) (in employment discrimination suit, ordering production of text messages on work phones or company email accounts, but holding that text messages on employee's personal phones are not within the employer's control, "[A] company does not possess or control the text messages from the personal phones of its employees and may not be compelled to disclose text messages

---

[2] One exception is that when there is a snow emergency, employees receive an automated telephone call or email, calling them into work (the emergency call-out system is set up and operated by the Town police department).

from employees' personal phones."); *Elkharwily v. Franciscan Health Sys.*, No. 3:15-cv-05579-RJB, 2016 U.S. Dist. LEXIS 85651, at *10 (W.D. Wash. June 30, 2016) (in employment discrimination action, holding that text messages are not in employer's control where employer did not provide employees with cell phones); *Cotton v. Costco Wholesale Corp.*, 2013 U.S. Dist. LEXIS 103369, at *17-18 (D. Kan. July 24, 2013) (denying motion to compel text messages on employees' personal phones where the plaintiff "does not contend that Costco issued the cell phones to these employees, that the employees used the cell phones for any work-related purpose, or that Costco otherwise has any legal right to obtain employee text messages on demand").

Nor has Plaintiff provided any reason to think that any non-party employees have relevant work-related "photos, videos, and recordings concerning plaintiff," on their personal electronic devices. First, it is unlikely that any Highway Department employee would have video or other recordings of Plaintiff that she is unaware of. Section 18-21 of the Town Code provides that Town employees are "barred from videotaping and/or audiotaping any individual or proceeding involving Town business without the consent of each of the individuals who are being video- and/or audiotaped."

Second, the Highway Department employees are not like the office workers or high-ranking employees at issue in the cases cited by Plaintiff. Plaintiff is seeking information from the personal cell phones of laborers whose job duties generally do not involve sending communications on behalf of the Highway Department. While Plaintiff's letter vaguely asserts that, "plaintiff's coworkers used their personal devices to communicate about work-related matters in group chats where plaintiff was included," Plaintiff did not produce any such "group chats" in her document production, thereby calling into question the existence and relevance of such purported "chats." Plaintiff provides no basis to conclude that employees were using their personal phones or email accounts for work-related reasons.

Third, there is no reason to think that non-party employees would have relevant materials on their phones. The vast majority of employees have little interaction with Plaintiff on a daily basis. Employees arrive at the Highway Department in the morning and then disperse to their assigned crew. For approximately two years prior to her suit, Plaintiff was assigned to the tree crew with defendants Klein, Salvo, and Lillo. The number of responsive documents produced from these defendants personal devices has been minimal (Salvo had none, Klein had two photos that included plaintiff).[3] The minimal nature of the documents on devices of Plaintiff's own crew members demonstrates that it is highly unlikely that other non-party Highway employees, not on Plaintiff's crew, would have relevant materials on their personal phones.

In sum, Plaintiff has failed to show that (1) the personal phones and other devices of non-party employees are within the possession, custody, or control of the Town, or (2) that non-party employees are likely to have responsive materials on their personal phones. Plaintiff certainly has not made a showing that would justify the unprecedented invasion of employees' privacy involved in ordering the Town to inquire into the content of employee's personal devices.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

*/s/ John M. Flannery*

---

[3] Defendant Lillo is separately represented, but it appears that Lillo also searched personal devices as part of his response to Plaintiff's document requests.

8215349v.3