UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X  Docket No.:  19-CV-05503 (VB)
VICTORIA MALONE,                                        :
                                                       :
                             Plaintiff,                :
                                                       :
          -against-                                    :
                                                       :
THE TOWN OF CLARKSTOWN, TOWN OF                         :
CLARKSTOWN HIGHWAY DEPARTMENT,                          :
WAYNE BALLARD, in his personal and official            :
capacity as Clarkstown Highway Superintendent,         :
FRANK DIZENZO, in his personal and official            :
capacity as Clarkstown Highway Superintendent,         :
ANDREW LAWRENCE, in his personal and official          :
capacity, DAVID SALVO, in his personal and official    :
capacity, ROBERT KLEIN, in his personal and official   :
capacity, TUCKER CONNINGTON, in his personal           :
and official capacity, and BRIAN LILLO, in his         :
personal and official capacity,                        :
                                                       :
                             Defendants.                :
-----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF THE TOWN OF CLARKSTOWN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendant Town of Clarkstown
1133 Westchester Avenue
White Plains, NY  10604
(914) 323-7000

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

Preliminary Statement ...................................................................................................... 1

Relevant Facts and Procedural History ........................................................................... 2

Argument ......................................................................................................................... 5

    I.    The Town Is Entitled to Summary Judgment on Plaintiff's Retaliation Claims ................................................................................................................. 7

        A.    The Alleged Conduct by Lillo Does Not Constitute Adverse Employment Action and There Is No Basis to Hold the Town Liable for Lillo's Actions .......................................................................... 10

        B.    There Is No Evidence of Tampering with Trucks in January and February 2019 ........................................................................................... 14

        C.    Plaintiff's Transfer to the Town Garage Was Not Retaliatory ................. 16

        D.    Retaliation Claims Based on Pre-2016 Allegations Are Barred by the Release ........................................................................................... 18

            1.    Access to Administrative Office Restroom .................................. 18

            2.    Receipt of Go-Girl ...................................................................... 20

        E.    Tucker Connington Did Not Discriminate or Retaliate Against Plaintiff ................................................................................................. 21

            1.    Plaintiff Was Not Denied Overtime For Retaliatory or Discriminatory Reasons ............................................................. 22

            2.    Plaintiff Cannot State a Claim Based on the Assignment of Truck #333 ................................................................................. 23

    II.    The Town Is Entitled to Summary Judgment on Plaintiff's Hostile Work Environment Claims Based on Alleged Harassment by Tucker Connington ....... 24

Conclusion ..................................................................................................................... 25

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................ 6

*Brod v. Omya*,
   653 F.3d 156 (2d Cir. 2011) .................................................................................... 7

*Brown v. Henderson*,
   115 F. Supp. 2d 445 (S.D.N.Y. 2000) ................................................................ 9, 13

*Brunson v. Bayer Corp.*,
   237 F. Supp. 2d 192 (D. Conn. 2002) ................................................................... 13

*Burlington N. & Santa Fe Ry. Co. v. White*,
   548 U.S. 53, 54 (2006) ....................................................................................... 8, 23

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................. 6, 7

*Ciulla-Noto v. Xerox Corp.*,
   2012 U.S. Dist. LEXIS 172649 (W.D.N.Y. Dec. 4, 2012) ..................................... 16

*Curtis v. Citibank, N.A.*,
   70 Fed. Appx. 20 (2d Cir. June 27, 2003) ............................................................. 16

*Del Pozo v. Bellevue Hosp. Ctr.*,
   2011 U.S. Dist. LEXIS 20986 (S.D.N.Y. Mar. 2, 2011) ................................... 12, 13

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998) ........................................................................................... 9, 21

*Farrell v. City of New York*,
   2018 U.S. Dist. LEXIS 25227 n.1 (S.D.N.Y. Feb. 15, 2018) ................................. 11

*Fergus v. City of New York*,
   2008 U.S. Dist. LEXIS 144256 (E.D.N.Y. July 1, 2018) ....................................... 22

*Francis v. Davis H. Elliot Constr. Co.*,
   2013 U.S. Dist. LEXIS 33310 (S.D. Ohio, Western Div. Mar. 11, 2013) ............... 25

*Galabya v. New York City Bd. of Educ.*,
   202 F.3d 636 (2d Cir. 2000) ..................................................................................... 8

*Gallo v. Prudential Residential Servs., Ltd. Pshp.*,
22 F.3d 1219 (2d Cir. 1994) ................................................................... 6

*Guardian Life Ins. Co. v. Gilmore*,
45 F. Supp. 3d 310 (S.D.N.Y. 2014) ....................................................... 6

*Hawkins v. NYS Office of Mental Health*,
845 Fed. Appx. 9 (2d Cir. Feb. 4, 2021)................................................. 7

*Holtz v. Rockefeller & Co., Inc.*,
258 F.3d 62 (2d Cir. 2001) ..................................................................... 9

*In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*,
387 F. Supp. 3d 323 (S.D.N.Y. 2019) ................................................... 15

*Kessler v. Westchester Cnty. Dep't of Soc. Servs.*,
461 F.3d 199 (2d Cir. 2006) ................................................................... 7

*Kirkland v. Cablevision Sys.*,
760 F.3d 223 (2d Cir. 2014) ............................................................... 7, 8

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
2013 U.S. Dist. LEXIS 203012 (S.D.N.Y. Mar. 25, 2013) ..................... 7

*Leftridge v. N.Y. City Dep't of Educ.*,
2020 U.S. Dist. LEXIS55423 (S.D.N.Y. Mar. 30, 2020) ...................... 19

*Loris v. Moore*,
344 Fed. Appx. 710 (2d Cir. Sept. 3, 2009)......................................... 17

*Loris v. Moore*,
2008 U.S. Dist. LEXIS 63560 (D. Conn. Aug. 20, 2008) ..................... 17

*Madison Square Garden, L.P. v. National Hockey League*,
2008 U.S. Dist. LEXIS 80475 (S.D.N.Y. Oct. 10, 2008) ...................... 20

*Marcavage v. City of New York*,
689 F.3d 98 (2d Cir. 2012) ................................................................... 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)................................................................................ 6

*McGullam v. Cedar Graphics, Inc.*,
609 F.3d 70 (2d Cir. 2010) ............................................................. 21, 23

*Miksic v. TD Ameritrade Holding Corp.*,
2013 U.S. Dist. LEXIS 63254,  (S.D.N.Y. Mar. 7, 2013) ...................... 8

iii

*Miller v. N.Y. State Police*,
   2019 U.S. Dist. LEXIS 143963 (W.D.N.Y. Aug. 22, 2019) .................................................. 22

*Oncale v. Sundowner Offshore Servs., Inc.*,
   523 U.S. 75 (1998) ....................................................................................................... 9, 24

*Pellier v. British Airways, Plc.*,
   2006 U.S. Dist. LEXIS 3219 (E.D.N.Y. Jan. 17, 2006) ........................................................ 17

*Peterson v. Long Island R.R. Co.*,
   2012 U.S. Dist. LEXIS 85054 (E.D.N.Y. June 19, 2012) ..................................................... 24

*Powell v. Omnicorm*,
   497 F.3d 124 (2d Cir. 2007) ......................................................................................... 19

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
   743 F.3d 11 (2d Cir. 2014) ......................................................................................... 8, 9, 12

*Rosioreanu v. City of New York*,
   526 F. App'x 118 (2d Cir. 2013) .................................................................................... 7

*Sanchez v. McAllenan*,
   2019 U.S. Dist. LEXIS 136596 (W.D. Wash. Aug. 13, 2019) ............................................... 25

*Sangan v. Yale Univ.*,
   2008 U.S. Dist. LEXIS 8973 (D. Conn. Feb. 7, 2008) ........................................................ 21

*Scott v. Harris*,
   550 U.S. 372 (2007) ................................................................................................. 6, 11

*Small v. Garland*,
   2021 U.S. Dist. LEXIS 63010 (S.D.N.Y. Mar. 31, 2021) ................................................ 7, 9, 12

*Terry v. Ashcroft*,
   336 F.3d 128 (2d Cir. 2003) ......................................................................................... 8

*Tolliver v. Jordan*,
   2021 U.S. Dist. LEXIS 123462 (S.D.N.Y. 2021) ................................................................ 16

*Vance v. Ball*,
   570 U.S. 421 (2013) .................................................................................................... 25

*Water Pollution Control Auth. v. Flowserve US, Inc.*,
   782 F. App'x 9 (2d Cir. 2019) ...................................................................................... 15

*Waters v. General Bd. of Global Ministries*,
   769 F. Supp. 2d 545 (S.D.N.Y. 2011) ............................................................................. 16

iv

*Wills v. Amerada Hess Corp.*,
    379 F.3d 32 (2d Cir. 2004) ................................................................................. 15

*Wright v. Goord*,
    554 F.3d 255 (2d Cir. 2009) ................................................................................ 6

*Wrobel v. County of Erie*,
    692 F.3d 22 (2d Cir. 2012) .................................................................................. 6

*Zann Kwan v. Andalex Grp. LLC*,
    737 F.3d 834 (2d Cir. 2013) ................................................................................ 8

**Statutes**

42 U.S.C. § 1983 ......................................................................................... 4, 5, 19, 20

42 U.S.C. § 1985(2) ................................................................................................. 5

Title VII, 42 U.S.C. § 2000e, *et seq* ................................................................. *passim*

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................ 7

Fed. R. Civ. P. 56(c) ................................................................................................ 5

Local Rule 56.1 ................................................................................................ *passim*

262524642v.3

Defendant, the Town of Clarkstown, by its undersigned attorneys, respectfully submits this memorandum of law in support of its motion for partial summary judgment.

## Preliminary Statement

Plaintiff, Victoria Malone, alleges that she was subjected to a hostile work environment at the Town Highway Department due to her gender, in violation of Title VII, the Equal Protect Clause, and the New York State Human Rights Law ("NYSHRL"). She also alleges that she was subjected to various acts of retaliation after complaining about unlawful discrimination, including retaliatory harassment by Brian Lillo, tampering with Highway equipment, her transfer to the Town Garage, an alleged temporary crew reassignments resulting in lost overtime and assignment to an unsafe truck.

Plaintiff cannot establish a *prima facie* case of retaliation with respect to any of these alleged retaliatory acts, nor can she show that the Town's legitimate, non-discriminatory reasons for decisions regarding crew and equipment assignments and her March 2019 transfer were pretextual. There is also no basis to impute liability to the Town for the alleged retaliatory acts of Plaintiff's co-workers as the Town conducted thorough investigations of Plaintiff's complaints of retaliation, including the review of surveillance video where available, and in each instance reasonably concluded that Plaintiff's allegations were unsupported.

Plaintiff also cites alleged retaliation from 2010 and early 2016; such claims are barred by the April 29, 2016 Stipulation of Settlement and General Release (the "Release") that Plaintiff entered with the Town. The Release is clear and unambiguous, and Plaintiff knowingly and voluntarily executed the Release while represented by counsel. The Town is entitled to summary judgment on Plaintiff's retaliation claims based on pre-Release conduct.

1

Finally, the Town is also entitled to summary judgment on that portion of Plaintiff's hostile work environment claims based on the alleged conduct of Connington.  The undisputed facts establish that the conduct did not constitute harassment, nor is there any evidence of discriminatory intent.  Accordingly, the conduct cannot form the basis of a discrimination claim against the Town.

### Relevant Facts and Procedural History

The relevant facts and procedural history are set forth in full in the accompanying statement submitted pursuant to Local Rule 56.1.  A summary of the facts is set forth below.

Plaintiff began working for the Clarkstown Highway Department as a seasonal, student laborer 2003; she was hired full-time in 2009.  56.1 Stmt. ¶¶1-2.  Plaintiff alleges that-Highway Superintendent Wayne Ballard harassed her at work.  Among her complaints about Ballard, is that in 2010, when Plaintiff's father, Dennis Malone, ran against Mr. Ballard for the Superintendent position, Ballard decided that Plaintiff could no longer use the women's restroom near Ballard's office on the administrative side of the building and, instead, directed her to use a restroom on the operations side of the building.  56.1 Stmt. ¶¶17-18.

In 2014, Plaintiff filed a union grievance, along with one male employee, alleging that Ballard had improperly denied her a promotion to Machine Equipment Operator-II ("MEO-II"). 56.1 Stmt. ¶4.  In January 2016, newly-elected Highway Superintendent Frank DiZenzo began his tenure.  *Id.* at ¶22.  On April 29, 2016, Plaintiff entered a Settlement and General Release resolving her promotion grievance.  56.1 Stmt. ¶5; Ex. Z.[1]  Pursuant to the settlement, Plaintiff was promoted to MEO-II at the top of the salary scale, retroactive to January 1, 2016, and Plaintiff released all claims against the Town and its employees, including claims for discrimination and retaliation. 56.1 Stmt. ¶5; Ex. Z.

---

[1] All exhibits referenced herein are annexed to the accompanying declaration of John M. Flannery, Esq.

From early 2016 through June 28, 2018, Plaintiff's primary crew assignment was to the tree crew.  56.1 Stmt. ¶12.  Robert Klein was the foreman of the tree crew and MEO-IIs Brian Lillo, Chris McDermott, and David Salvo were also on the crew.  *Id*.  Plaintiff alleges that on June 28, 2018, Brian Lillo swung a chainsaw at her head.  56.1 Stmt. ¶65; Ex. UU (notice of claim). Upon Plaintiff's report of the incident, Plaintiff and Lillo were immediately placed on separate crews, and the Town Attorney's Office began an investigation and reported the allegation to the Clarkstown Police Department ("CPD"), which also began an investigation.  56.1 Stmt. ¶¶66-70. After, *inter alia*, reviewing surveillance video of the incident, the Town Attorney's Office concluded that Plaintiff's complaint was unsupported.  Nevertheless, Plaintiff and Lillo did not work on a crew together after the June 28, 2018 incident.  56.1 Stmt. ¶66.

Plaintiff alleges that she has been subjected to various incidents of retaliation since her complaint about the chainsaw incident.  In January 2019, Plaintiff complained to the union that Lillo was harassing her.  56.1 Stmt. ¶76.  The union forwarded the allegations to the Town Attorney's Office, and the Town began an investigation.  *Id*.  Again, the Town reviewed the available surveillance video and concluded that the allegations were unsupported. 56.1 Stmt. ¶¶80-86; Ex. M (Toomey Memo).

On February 28, 2019, Plaintiff's then-attorney submitted a letter ("2/28 Letter") to the Town alleging that unnamed individuals had tampered with trucks utilized by Plaintiff in attempts to retaliate against Plaintiff.  56.1 Stmt. at ¶90.  Specifically, in January 2019 while Plaintiff was operating roll-off truck #327, the cable connecting the truck to a dumpster snapped, and in February 2018, while Plaintiff was driving a snowplow, the right rear wheel fell off.  *Id*.  In response to the 2/28 Letter, the Town immediately contacted the CPD to investigate the allegations.  *Id*. at ¶91.  Also, in consultation with Plaintiff's attorney, the Town arranged for

3

Plaintiff to be transferred from the Highway Department to the Town Garage which was overseen by Plaintiff's brother-in-law, for the duration of the investigation. 56.1 Stmt. ¶¶91-96.

The police investigation concluded that there was no evidence of tampering, 56.1 Stmt. ¶103, Ex. U; however, Plaintiff did not want to return to the Highway Department, 56.1 Stmt. ¶115. In January 2020, after a new Highway Superintendent took office, Plaintiff was asked to return to the Highway Department; she refused. 56.1 Stmt. ¶117. Additionally, prior to the transfer to the Garage, the Town had offered to transfer Plaintiff to MEO-II positions in two other departments, but Plaintiff declined both transfers. 56.1 Stmt. ¶¶88-89. Plaintiff alleges that the purported sabotage incidents and her transfer to the Town Garage were acts of retaliation.

Plaintiff also alleges that in March and June 2018, a supervisor, Tucker Connington, took actions against her that were discriminatory or retaliatory. Ex. A ¶40. Plaintiff alleges that in March 2018, Connington temporarily assigned Plaintiff to another crew causing her to miss out on an opportunity for overtime. *Id.* Plaintiff filed a union grievance regarding the alleged lost overtime. Plaintiff further alleges that Connington assigned her to drive an unsafe truck. *Id.* The details of these incidents are discussed *infra* at I.E.

Plaintiff served a notice of claim on the Town on September 28, 2018, asserting claims against the Town, DiZenzo, and Lillo alleging that Lillo "swung a chainsaw at her head" on June 28, 2018. Ex. UU (notice of claim); Ex. A ¶8. She served a supplemental notice of claim on February 4, 2019. Ex. A ¶8. Plaintiff filed the instant lawsuit on June 12, 2019. DE #1. In response to the Town Defendants' motion to dismiss, Plaintiff amended the complaint on October 22, 2019, asserting claims for (1) Gender Discrimination under § 1983 against the Town, (2) Gender Discrimination under § 1983 against the Individual Defendants, (3) Gender Discrimination under the New York State Human Rights Law ("NYSHRL") against all defendants, (4) Retaliation

4

under the NYSHRL against all defendants, (5) Assault and Battery against Klein, Salvo, and Lillo, (6) Intentional Infliction of Emotional Distress against the Individual Defendants, (7) Gender Discrimination under Title VII against the Town; (8) Retaliation under Title VII against the Town; and (9) Retaliation by Witness Intimidation under 42 U.S.C. § 1985(2) against the Town and DiZenzo.  Ex. A.  Subsequently, Plaintiff entered into multiple stipulations resulting in the dismissal of, *inter alia*, all claims against Wayne Ballard, Andrew Lawrence, Brian Lillo, and Tucker Connington.  DE #83. Plaintiff further dismissed her claims for assault and battery, intentional infliction of emotional distress, and witness intimidation in violation of § 1985.  DE #83, #87, #169.  The following counts remain in the case:  (1) Section 1983 claim against the Town for Gender Discrimination in violation of the Equal Protection Clause; (2) Section 1983 claim against DiZenzo, Salvo, and Klein for Gender Discrimination in violation of the Equal Protection Clause; (3) Gender Discrimination in violation of the NYSHRL against all remaining defendants; (4) Retaliation in violation of the NYSHRL against the Town; (7) Gender Discrimination in violation of Title VII against the Town; and (8) Retaliation in violation of Title VII against the Town.  DE #166 (joint letter).

The Town now moves for summary judgment with respect to Plaintiff's retaliation claims pursuant to the NYSHRL and Title VII, and for summary judgment on all of Plaintiff's discrimination claims against the Town to the extent they are based on an alleged hostile work environment caused by the conduct of Tucker Connington.

## Argument

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In moving for summary judgment against a party who will bear the ultimate burden

5

of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if it can point to an absence of evidence to support an essential element of the non-moving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Gallo v. Prudential Residential Servs., Ltd. Pshp.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994).  The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (citation omitted).  In making this determination, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion.  *Id.*

To survive a summary judgment motion, the non-movant "need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a *genuine issue for trial*,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks omitted).  *See also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

At the summary judgment stage, "'[t]he role of the court is not to resolve disputed issues

6

of fact but to assess whether there are any factual issues to be tried.'" *Brod v. Omya*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Celotex Corp.*, 477 U.S. at 323-24.  To that end, Rule 56(a) permits a party to move for summary judgment as to a "claim or defense," or "part of each claim or defense[.]"  Fed. R. Civ. P. 56(a); Adv. Comm. Notes 2010 Amendments to Rule 56(a) ("The first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense.").  "The purpose of a partial summary judgment motion is to promote efficiency and narrow the scope of a trial to the issues that are reasonably disputed." *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, 2013 U.S. Dist. LEXIS 203012, at *37 (S.D.N.Y. Mar. 25, 2013); *see e.g., Small v. Garland*, 2021 U.S. Dist. LEXIS 63010, *4-5 (S.D.N.Y. Mar. 31, 2021) (granting summary judgment on plaintiff's claims for retaliation based on failure to promote and retaliatory harassment, and denying summary judgment on portion of retaliation claim based on issuance of reprimand).

### I.      The Town Is Entitled to Summary Judgment on Plaintiff's Retaliation Claims

Under Title VII, retaliation claims "are subject to the *McDonnell Douglas* burden-shifting standard." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014).[2]  First, the plaintiff must establish a *prima facie* case, by showing:

> (1) [T]hat she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity;  (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action.

*Rosioreanu v. City of New York*, 526 Fed. Appx. 118, 120 (2d Cir. 2013) (citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205-206 (2d Cir. 2006)).  If the plaintiff

---

[2] "NYSHRL retaliation claims are governed by the same standard."  *Hawkins v. NYS Office of Mental Health*, 845 Fed. Appx. 9, 10 (2d Cir. Feb. 4, 2021).

sustains her initial burden, the burden shifts to the employer to show a legitimate, non-retaliatory reason for the adverse employment action. *Kirkland*, 760 F.3d at 225. "If the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext for . . . retaliation." *Id*. To this end, the plaintiff must show "that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

To demonstrate that she experienced a "'material adverse action" for purposes of a retaliation claim, "a plaintiff must show that … it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006)). Such an action may include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) "An adverse employment action is one which is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id*. (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)); *see also Miksic v. TD Ameritrade Holding Corp.*, 2013 U.S. Dist. LEXIS 63254, *9-10 (S.D.N.Y. Mar. 7, 2013) ("Actions that cause a plaintiff 'embarrassment or anxiety' are insufficient to qualify as an adverse action because 'such intangible consequences are not materially adverse alterations of employment conditions.'" (citation omitted)).

"Unchecked" retaliatory conduct by co-workers may constitute an adverse action sufficient to support a retaliation claim where such conduct is severe. *Rivera*, 743 F.3d at 26 (citation omitted). For a retaliatory harassment claim, a plaintiff "must satisfy the same standard that

8

governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous or concerted to have altered the conditions of [her] employment.' *Small*, 2021 U.S. Dist. LEXIS 63010 at *76 (citations omitted).  As with all types of alleged retaliation, "trivial harms" are not "materially adverse." *Id*. at 64.  "Title VII is not 'a general civility code.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 75 (2d Cir. 2001) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id*. (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998) (citation and internal quotation marks omitted)). "The incidents of allegedly offensive conduct must also be 'more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id*. (citation and internal quotation marks omitted)).  "Title VII does not protect an employee from 'all retaliation' but only 'retaliation that produced an injury or harm." *Rivera*, 743 F.3d at 24-24.

"To establish alleged retaliatory harassment by a co-worker, a Title VII plaintiff must prove, among other things, that (i) the alleged retaliatory harassment was sufficiently severe to constitute an adverse change in the terms and conditions of her employment, and (ii) her employer knew about but failed to take action to abate the retaliatory harassment." *Brown v. Henderson*, 115 F. Supp. 2d 445, 451 (S.D.N.Y. 2000).

Here, Plaintiff alleges that, in retaliation for her complaints regarding employment discrimination, the following incidents occurred: (1) Lillo harassed her at work in December 2018, Ex. A at ¶46; (2) Highway vehicles utilized by Plaintiff were tampered with in January and February 2019, *id*. at ¶¶47-50; (3) Plaintiff was transferred to the Town Garage in March 2019, *id.* at ¶44; (4) Mr. Connington retaliated against her by changing her daily assignments so she lost

9

overtime pay and assigning her to drive an unsafe truck, *id.* at ¶40.  In opposition to the Town's pre-motion letter, Plaintiff identified the following alleged retaliatory incidents: (1) Plaintiff was prohibited from using the restroom on the administrative side of the Highway Department; (2) Defendant DiZenzo gave Plaintiff a "GoGirl" device; and (3) the transfer to the Town Garage.  DE #170 (Plaintiff's 8/16/21 letter).

### A.  The Alleged Conduct by Lillo Does Not Constitute Adverse Employment Action and There Is No Basis to Hold the Town Liable for Lillo's Actions

Plaintiff's claim of retaliatory harassment by Lillo fails because the undisputed facts establish that (1) in multiple instances the irrefutable video evidence establishes that the alleged harassment did not occur and the remaining disputed allegations do not rise to the level of an adverse employment action, and (2) there is no basis to impute liability to the Town for Lillo's conduct.

In January 2019, Plaintiff submitted a complaint to the Town (via the union), alleging that after she complained to the Town about the June 28, 2018 "chainsaw incident," Lillo retaliated against her by, (1) "aggressively" opening the key box near her on December 13, 2018, (2) giving her a look of disgust, slamming the key box door and storming out of the room, on December 14, 2018, (3) whipping an air hose in the air as she walked towards him on December 27, 2018, and (4) bumping her book bag and staring at her.  56.1 Stmt. ¶76; Ex. W.  These incidents either did not occur as alleged, or do not constitute material adverse action for purposes of a retaliation claim.

First, the time clock surveillance video demonstrates that neither the December 13, 2018 nor December 14, 2018 incidents occurred as alleged by Plaintiff.  *See* Ex. T (Paul Aff.) at Exhibit 1; 56.1 Stmt. ¶¶80-85.  On December 13, 2018, Lillo entered the time clock room ahead of Plaintiff, removed a key from the key box, and left the room.  He was in the room for 13 seconds, said nothing to Plaintiff, and did not behave aggressively towards her.  *Id.* at ¶83.  The incident

10

was not one that constitutes harassment of any kind let alone "severe" harassment. Second, the surveillance videos for December 14, 2018 show that the alleged harassment never occurred. 56.1 Stmt. ¶¶84-85. "Although on summary judgment the evidence must be viewed in the light most favorable to . . . the non-moving parties, when there is reliable objective evidence—such as a recording—the evidence may speak for itself." *Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012) (rejecting plaintiffs' "characteriz[ation of] their behavior toward the [arresting] officers as cordial" because "audio recording show[ed] indisputably that they were neither courteous nor complaint") (citing *Scott*, 550 U.S. at 378-81 (rejecting non-movant's account of police chase because it was "so utterly discredited by the [video recording] that no reasonable jury could have believed him")); *see also Farrell v. City of New York*, 2018 U.S. Dist. LEXIS 25227, *29 n.1 (S.D.N.Y. Feb. 15, 2018) (surveillance video from date of encounter "is reliable objective evidence on which the Court may rely on summary judgment"). No reasonable juror could conclude that Lillo was behaving "aggressively" or harassing Plaintiff in the time clock room on either December 13th or 14th.

Plaintiff further alleges that on December 27, 2018, Lillo "whipped" an air hose in the air as she was walking towards him. The air hose did not come into contact with Plaintiff and Lillo did not say anything to her. 56.1 Stmt. ¶79. Plaintiff further alleges that in December 2018, Lillo threw a coffee cup in the trash "aggressively," bumped her book bag, and stared at her. *Id*. Even if these allegations were true—Lillo denies them—this would not constitute an adverse event capable of deterring a reasonable employee from making a complaint.[3]

As noted above, to arise to the level of a material adverse action for a retaliation claim, co-worker harassment must be "severe." The trivial allegations raised by Plaintiff do not rise to that

---

[3] Lillo denies that he intentionally "whipped" the hose into the air to intimidate Malone or otherwise did anything to harass her. Ex. WW (Lillo Dep.) at 125:10-126:17; Ex. OO (Toomey Memo.) at TOWN004358.

level.  For example, in *Small v. Garland*, the plaintiff prison employee alleged that after she reported an incident of sexual harassment, she had been "outcast and retaliated against" at work. 2021 U.S. Dist. LEXIS 63010, *34 (S.D.N.Y. Mar. 31, 2021).  The plaintiff complained that (1) she believed the co-worker about whom she complained had attempted to bring a firearm to work to harm her, (2) another co-worker refused to allow her to heat up food, (3) on two instances co-workers who control the elevator sent her to the inmate recreation area on the roof instead of her intended destination or deliberately caused the elevator to skip the floor on which she was waiting, (4) she was skipped for overtime, (5) 30 overtime payments to her were delayed, but ultimately paid, (6) co-workers stopped talking to her, and (7) co-workers made inappropriate comments about her complaint, including "Don't talk to her. That's the sexual harassment girl. [ ] She'll report you."  *Id.* at *35-38, *75-76.  The court granted summary judgment for the defendant employer, holding that the alleged instances of retaliatory harassment were not severe, pervasive, or concerted, but rather were trivial.  *Id.* at *76-77; *id.* at *5-6 ("the handful of isolated incidents that plaintiff complains of following her protected activity do not rise to the level of a hostile work environment").  *See also Rivera*, 743 F.3d at *25-26 (affirming summary judgment for employer on retaliation claim because alleged actions of two disciplinary citations, assignment to drive particularly "dirty buses," a delayed overtime payment, and denial of time off to attend doctor's appointment would not "dissuade a reasonable worker from making or supporting a charge of discrimination" as a matter of law).

In *Del Pozo v. Bellevue Hosp. Ctr.*, the plaintiff, a hospital security staff employee at Bellevue, alleged that after he filed a complaint, he was subjected to retaliatory harassment including (1) his supervisor said "Fuck [plaintiff] outside his presence on multiple occasions, and (2) on three occasions his locker was sprayed with urine."  2011 U.S. Dist. LEXIS 20986, *28-29

12

(S.D.N.Y. Mar. 2, 2011).  The court first concluded that the conduct did not rise to the level of an adverse action for purposes of a retaliation claim, reasoning:  "While [the supervisor's] alleged comments may be rude and derogatory, Title VII is not a 'general civility code' nor does it protect against 'a few isolated incidents of boorish or offensive language,' particularly when heard second hand."  *Id*. at *29 (internal citations omitted).  Moreover, the alleged locker room incident was not actionable because it could not imputed to the employer:

> Plaintiff does not identify the person(s) who sprayed urine on his locker.  Thus, there can be no employer responsibility as there is no evidence that: (1) the perpetrator of the harassment was Plaintiff's supervisor; or (2) Bellevue knew about the harassment and failed to stop it.  There is simply no evidence that Bellevue orchestrated, acquiesced in, condoned, or encouraged the retaliatory harassment.

*Id*. at *29 (internal citations omitted).

Similarly, there is no basis on which to hold the Town liable for Lillo's alleged actions as it did not act negligently either before or after the December 2018 incidents were reported.  Lillo is Plaintiff's co-worker, not a supervisor.  56.1 Stmt. ¶¶12, 64.  Accordingly, the Town would only be liable for Lillo's alleged retaliatory harassment of Plaintiff if it "knew about but failed to take action to abate" the retaliatory harassment.  *Brown*, 115 F. Supp. 2d at 451; *see also Brunson v. Bayer Corp.*, 237 F. Supp. 2d 192, 205 (D. Conn. 2002) (summary judgment to employer on claim of retaliatory harassment by co-worker where Human Resources, once notified of alleged retaliation, *inter alia*, conducted an investigation, and offered plaintiff another job that would not involve working with the alleged retaliators).  Here, the Town separated Plaintiff and Lillo immediately after June 28, 2018, and the two never worked on the same crew again.  56.1 Stmt. ¶66.  Plaintiff reported the alleged December 2018 incidents to the union on January 9, 2019, which forwarded them to the Town Attorney the next day.  The Town Attorney's office immediately conducted an investigation, gathering any available surveillance video and

13

interviewing the witnesses identified by Plaintiff. *Id*. at ¶¶80-85; Ex. T (Paul Aff.) at ¶6. Ultimately, the Town concluded that Plaintiffs' allegations were unsubstantiated. 56.1 Stmt. ¶86. There are no allegations that Lillo retaliated against Plaintiff after she reported the incidents to the Town. Accordingly, the Town is not liable for the alleged retaliatory conduct by Lillo.

### B. There Is No Evidence of Tampering with Trucks in January and February 2019

Plaintiff alleges that she "experienced two serious, potentially deadly on-the-job accidents" in January and February 2019, after complaining to the Town of harassment. Ex. A (Compl.) ¶¶47-49. Plaintiff cannot make out a *prima facie* retaliation claim based on these incidents because there is no evidence of adverse action: there is no evidence that either incident was the result of intentional tampering with a vehicle. There is also no basis on which to impute liability to the Town for the alleged retaliation.

The undisputed evidence shows that, on January 17, 2019, while Plaintiff was driving roll-off truck #327, the cable connecting the roll-off to a dumpster snapped, causing the dumpster to slide into the street.[4]  56.1 Stmt. ¶104; Ex. U (police report). No one was hurt during the incident. 56.1 Stmt. ¶104. The cable was repaired by an outside vendor who observed that the broken cable appeared to have been caused by "normal wear and tear." Id. at ¶106; Ex. TT at TOWN005410 (AH&H letter). On February 12, 2018, while driving snow plow #91 during a call-out for snow, the back right tire on Plaintiff's plow slid off. 56.1 Stmt. ¶107-108. Plaintiff was not injured. 56.1 Stmt. ¶108. Plaintiff's attorney sent the 2/28 Letter to the Town's Labor Counsel alleging that the two incidents were acts of intentional retaliation and demanding that the Town take action

---

[4] Plaintiff alleges that "it was well-known at the Highway Department that Ms. Malone was assigned to the roll-off truck whose cable snapped." Ex. A at ¶48. However, as the operator of the roll-off, it was not Plaintiff who was in danger from the cable snapping, it was the crew members on the ground who may have been near or behind the dumpster. *See e.g.*, Ex. XX (Luther Dep.) at 62:9-63:21 (concerned for everyone's safety). Nor was truck #327 used exclusively by Plaintiff. 56.1 Stmt. ¶104; Ex. U at TOWN001621-1622. Thus, tampering with a cable would not only have endangered Plaintiff, it would have endangered her entire crew and every other crew using the truck.

14

to ensure Plaintiff's safety.  56.1 Stmt. ¶¶90-91; Ex. M (Toomey Aff.) at Exhibit 1.

Given the severity of the allegations, Labor Counsel immediately referred the allegations to the CPD for investigation.  56.1 Stmt. ¶91.  The police conducted a thorough investigation, interviewing every witness identified by Plaintiff and the mechanic who reported to the scene of the snow plow.  56.1 Stmt. ¶¶103-109; Ex. U.  They learned that truck #327 had been used to haul heavy jersey barriers the night before the cable snapped, likely putting significant stress on the cable, and that tampering with either the cable (truck #327) or the plow wheel (truck #91) would have required special equipment.  None of the witnesses thought the trucks had been tampered with, and the police concluded that there was no evidence of tampering.  56.1 Stmt. ¶¶104-109.

Establishing that either incident constituted an intentional retaliatory act would require expert testimony.  "It is well established that 'expert testimony is required to establish causation' where the issue of causation is 'beyond the knowledge of lay jurors.'"  *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 387 F. Supp. 3d 323, 341 (S.D.N.Y. 2019) (quoting *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004)); *Water Pollution Control Auth. v. Flowserve US, Inc.*, 782 F. App'x 9, 14-15 (2d Cir. 2019) (affirming summary judgment for defendant where plaintiff's expert was precluded and "[e]xpert evidence is necessary . . . where the nexus between the injury and the alleged cause would not be obvious to the lay juror" (internal punctuation and citations omitted).  What caused a cable to snap or a wheel to slide off a plow are beyond the knowledge of lay jurors.  Thus, Plaintiff's claim also fails because she has not disclosed an expert on this issue.  Flannery Decl. ¶52.

The undisputed evidence establishes that there was no intentional tampering with either the cable on truck #327 or the wheel on plow #91.  Plaintiff has failed to produce any evidence from which a rational jury could conclude that either incident was a result of intentional misconduct or

15

retaliation.  Indeed, when asked at her deposition, Plaintiff could not point to any evidence that either incident was a result of tampering, nor could she identify anyone that she suspected of tampering with the vehicles.  56.1 Stmt. ¶116.  Mere speculation that a vehicle was tampered with is insufficient.  *See Curtis v. Citibank, N.A.*, 70 Fed. Appx. 20, 23 (2d Cir. June 27, 2003) (affirming summary judgment for employer on retaliation claim, where, *inter alia*, plaintiff's "claims of sabotage are entirely speculative and vague"); *Ciulla-Noto v. Xerox Corp.*, 2012 U.S. Dist. LEXIS 172649, *18 (W.D.N.Y. Dec. 4, 2012) (retaliatory harassment claim dismissed where, *inter alia*, plaintiff alleged that her work area was tampered with, but "has not identified any person who allegedly tampered with her work area, and has not adduced any evidence to suggest that the tampering was related to her complaint"), *aff'd for reasons stated by district court*, 563 Fed. Appx. 791 (2d Cir. Apr. 24, 2014).  Accordingly, the Town is entitled to summary judgment on Plaintiff's retaliation claim alleging vehicle tampering.

### C.  Plaintiff's Transfer to the Town Garage Was Not Retaliatory

Plaintiff cannot establish a *prima facie* case of retaliation based on her transfer to the Garage because voluntary transfers do not constitute adverse employment action.  Moreover, even if Plaintiff could establish that the transfer was an adverse action, the claim would fail because the Town had a legitimate, non-discriminatory reason for the transfer: Plaintiff's 2/28 Letter demanding a plan to ensure her safety.  *See Waters v. General Bd. of Global Ministries*, 769 F. Supp. 2d 545 (S.D.N.Y. 2011) (rejecting claim that transfer was result of age discrimination where the transfer "was voluntary and a result of a legitimate business decision"); *Pellier v. British Airways, Plc.*, 2006 U.S. Dist. LEXIS 3219, *11, *18 (E.D.N.Y. Jan. 17, 2006); *see also Tolliver v. Jordan*, 2021 U.S. Dist. LEXIS 123462, *16-17 (S.D.N.Y. 2021) (dismissing claim of retaliatory transfer where plaintiff inmate made a request to transfer facilities).

16

For example, in *Pellier*, the court held that the plaintiff's transfer "cannot serve as an adverse employment action because she voluntarily requested and accepted it." *Pellier*, 2006 U.S. Dist. LEXIS, 3219, *11; *id*. at *32 (voluntary transfer could not serve as basis for retaliation claim). In *Pellier*, the plaintiff, a manager in the defendant's engineering department, made internal complaints of sexual harassment and filed a complaint with the EEOC. *Id*. at *5-6. She subsequently requested a transfer and agreed to transfer to a clerical position in another department. *Id*. at *3. The court rejected the plaintiff's argument that the transfer should be viewed as involuntary, finding inadequate evidence that the employer forced a transfer. *Id*. at *13-18. Moreover, the court held that even assuming the transfer was an adverse action, the employer "presented a legitimate non-discriminatory reason for [the plaintiff's] transfer – her request – which she does not rebut." *Id*. at *18. Accordingly, the employer was entitled to summary judgment on plaintiff's discrimination and retaliation claims based on the transfer. *Id*. at *11, *32.

Similarly, in *Loris v. Moore*, the court granted summary judgment to the defendant on the plaintiff teacher's claim of a retaliatory transfer where the defendant employer had a legitimate, non-discriminatory reason for the transfer: the plaintiff's request to be transferred to a different school so as not to be supervised by the same principal. 2008 U.S. Dist. LEXIS 63560, *17, *36-38 (D. Conn. Aug. 20, 2008). The Second Circuit affirmed summary judgment on the retaliation claim. *Loris v. Moore*, 344 Fed. Appx. 710, 712 (2d Cir. Sept. 3, 2009) (plaintiff failed to rebut non-discriminatory reasons).

Here, Plaintiff cannot establish an adverse employment action because the transfer was voluntary. The 2/28 Letter alleged that Plaintiff's physical safety was "at risk" as a result of intentional tampering with Highway vehicles but did not identify any alleged suspects who may have tampered with the vehicles, and asserted "The Town must implement a plan to protect Ms.

17

Malone. Please inform me of the steps the Town will take to investigate these incidents and ensure Ms. Malone's safety." Ex. M (Toomey Aff.) at Ex. 1; 56.1 Stmt. ¶90.  The Town's Labor Counsel immediately contacted Plaintiff's counsel to address these concerns, and suggested a transfer to the Town Garage during the duration of the police investigation of these incidents.  56.1 Stmt. ¶91. Plaintiff and her counsel did not object to this transfer.  *Id.* at ¶¶92, 96.  The transfer did not result in a decrease in Plaintiff's salary, benefits, or seniority.[5]  *Id.* at ¶98.  While the investigation of the 2/28 Letters revealed no evidence of tampering, Plaintiff refused to return to the Highway Department.  *Id.* at ¶¶115-118.  Accordingly, the undisputed evidence establishes that Plaintiff's transfer was voluntary and cannot be an adverse action.

Even if the transfer was considered an adverse action, the Town had a legitimate, non-discriminatory reason for the transfer:  There can be no retaliatory intent in the Town's acting on Plaintiff's demand that she be protected from unknown persons in the Highway Department and raising concerns for her safety.  56.1 Stmt. ¶¶90-91, 97; Ex. M (Toomey Aff.) at ¶7.

## D. Retaliation Claims Based on Pre-2016 Allegations Are Barred by the Release

### 1. Access to Administrative Office Restroom

In her pre-motion letter, Plaintiff asserts that she suffered retaliation when her father ran against Ballard for the position of Highway Superintendent and Ballard banned Plaintiff from using the restroom on the administrative side of the Highway Department office.  DE #170. Plaintiff alleges that she was directed to stop using the administrative office restroom in 2010. 56.1 Stmt. ¶17.  Any claim for retaliation based on this action is barred by the 2016 Release.

---

[5] While Plaintiff alleges that she has lost overtime opportunities available to Highway Department employees, to the extent Plaintiff has had fewer overtime opportunities, that is a result of Plaintiff's refusal to return to the Highway Department after the police investigation revealed no evidence of tampering, not any retaliatory action by the Town.

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicorm*, 497 F.3d 124, 128 (2d Cir. 2007).  Under New York law, "a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced," including a release of federal and state discrimination and retaliation claims. *Leftridge v. N.Y. City Dep't of Educ.*, 2020 U.S. Dist. LEXIS55423, *14 (S.D.N.Y. Mar. 30, 2020) (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir. 1998)).

In the 2016 Settlement and Release, Plaintiff

> fully, forever, irrevocably and unconditionally" releases the Town and its employees "from any and all claims, controversies, liabilities, complaints . . . and damages of whatever kind and nature, whether known or unknown . . . that Malone has had or now has, based on any and all aspects of her employment with the Town and/or any terms, conditions and/or changes in the terms and conditions of her employment with the Town, including but not limited to the Grievance, the Verified Petition and/or the Arbitration Hearing . . ., claims under 42 U.S.C. §§ 1983-1988, Title VII of the Civil Rights Act of 1964, . . . the [NYSHRL], . . .; all claims for civil rights violations, retaliation . . . all clams for emotional distress or mental anguish, . . . .

Ex. Z (2016 Release).  There can be no argument that the Release was not knowing and voluntary. Plaintiff was represented by an attorney and stated in the Release "Malone acknowledges and agrees that she has been advised to consult with an attorney and she has consulted with her attorney, Russell Wheeler, Esq. … prior to signing this Agreement and that she is entering into this Agreement voluntarily, knowingly and of her free will."  Ex. Z at MALONE_000304, ¶4; *see also id.* at ¶5 (acknowledging full and fair representation in the matter).   Indeed, Plaintiff acknowledged the validity of the Release at the start of this case and entered a stipulation stating "Plaintiff agrees that Defendants are not liable for any acts arising on or before April 29, 2016." DE #87 (11/19/19 So-Ordered Stipulation).

The language of the Release is also clear and unambiguous that all claims arising from Plaintiff's employment are released, including, *inter alia*, retaliation claims and claims under §

19

1983, Title VII, and the NYSHRL, if they are based on any "aspect of her employment," conduct or employment "conditions" arising or existing before the Release.  Any claim that the alleged ban from the administrative office restroom in 2010 constituted retaliation accrued long before the 2016 Release, and thus was a claim Plaintiff "has had or now has" on April 29, 2016.

Plaintiff tries to avoid this clear language by asserting, "[t]hat retaliatory prohibition continued until the day she was transferred out of the Highway Department."  DE #170 (Pl. 8/16/21 Letter).  Plaintiff cannot revive a released claim merely by claiming that a pre-existing condition continued, effectively claiming further damages of a released claim.  *See Madison Square Garden, L.P. v. National Hockey League*, 2008 U.S. Dist. LEXIS 80475, *6 (S.D.N.Y. Oct. 10, 2008) (rejecting plaintiff's argument that claims were not barred by prior release because they were based on "current conduct, not historical conduct" where only post-release conduct plaintiffs cited was (1) enforcement of pre-existing policies and (2) extension of a pre-existing license agreement).  Accordingly, the allegation that the prohibition from the administrative office restroom continued in effect after April 2016 does not state a new claim that was not covered by the Release.[6]

### 2. Receipt of Go-Girl

In her August 16, 2021 pre-motion letter, Plaintiff alleged for the first time that her receipt of a Go-Girl device as part of a gag gift from Frank DiZenzo constitutes retaliation.  *Compare* DE #170 (letter) *with* Ex. A ¶34.  First, this incident occurred in either late 2015 or early 2016 "shortly after" DiZenzo took office, Rule 56.1 Stmt. ¶25, and thus any retaliation claim based on the gift is barred by the Release.

---

[6] Nor can Plaintiff link the original ban or the alleged continuation of the ban to protected complaints of unlawful discrimination.  Ex. A ¶65, ¶78 (alleging Plaintiff was "retaliated against for her opposition to unlawful discrimination").  Plaintiff's allegation that Ballard precluded her from the administrative office restroom in 2010 because her father was his political opponent does not state a claim for retaliation under Title VII or the NYSHRL.  DE #170; Ex. C (50-h) at 167:17-168:12 (Ballard precluded Malone from using the restroom closest to Ballard's office because he thought Plaintiff was a spy for her father and didn't want Malone near his office).  Having a father who is running for Highway Superintendent is not "opposition to unlawful discrimination."

Second, even assuming *arguendo* the truth of Plaintiff's allegations, this does not rise to the level of adverse action. Plaintiff testified that she received a gift consisting of: a pink cowgirl hat, a sheriff's kit including a badge, toy gun, and belt, and the Go-Girl. She found the hat and sheriff's kit to be funny jokes that referenced a prior joke she had made to DiZenzo, but thought the Go-Girl was inappropriate. Rule 56.1 ¶¶25-26. "[S]poradic use of abusive language, gender-related jokes, and occasional teasing" cannot form the basis for a retaliation claim. *Sangan v. Yale Univ.,* 2008 U.S. Dist. LEXIS 8973, *19-20 (D. Conn. Feb. 7, 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "Also not covered are petty slights, minor annoyances often experienced by all employees, personality conflicts, general antipathy, snubbing by supervisors, or simple lack of good manners." *Id.* at *20; *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70 (2d Cir. 2010). In this instance, the receipt of a gag gift is trivial and insignificant and does not amount to an adverse action for purposes of a retaliation claim.

### E. Tucker Connington Did Not Discriminate or Retaliate Against Plaintiff

Plaintiff alleges that Tucker Connington "discriminated and retaliated" against Plaintiff "by changing her daily assignments such that she lost opportunities for overtime pay." Ex. A at ¶40.[7] She further alleged that in June 2018, "Connington retaliated against Ms. Malone by assigning her to drive a truck that was thereafter declared by the Department's mechanics to be unsafe." *Id.* The undisputed evidence shows that (1) Plaintiff was not denied overtime, (2) she was not bullied into using a truck she felt was unsafe, (3) neither incident arose to the level of an adverse employment action, and (4) there is no evidence that Connington's actions were motivated by a retaliatory or discriminatory motive.

---

[7] While Plaintiff has indicated that the allegations against Connington in ¶40 "will not be part of the Plaintiff's case," *see* DE #170, Plaintiff continues to pursue claims against the Town for retaliation and discrimination based on these allegations. Accordingly, the Town includes these claims in its summary judgment motion.

21

### 1.   Plaintiff Was Not Denied Overtime For Retaliatory or Discriminatory Reasons

The undisputed evidence shows that Plaintiff never suffered a retaliatory loss of overtime in March 2018.  In the union grievance that Plaintiff filed concerning this matter, she alleged that she was removed from the tree crew and denied overtime on March 13, 2018.  56.1 Stmt. ¶48. However, Plaintiff worked on the tree crew on March 13, 2018.  56.1 Stmt. ¶35.  The only day that she was not on the tree crew due to Salvo's complaint was March 14, 2018, and Salvo was also removed from the crew that day.  56.1 Stmt. ¶38.  Moreover, the tree crew did not work any overtime on March 14, 2018.  *Id.*  Plaintiff could not have lost overtime from March 15 to 20 because she was on vacation.  *Id.* at ¶39.  She returned to the crew on March 21, 2018.  *Id* at ¶45.

Plaintiff did work on a different crew on March 9, 2018 and the tree crew did earn more overtime that day than Plaintiff's crew; however, this occurred before Salvo complained about Plaintiff, not after.  56.1 Stmt. ¶32.  There is no evidence that Connington's decision to assign Plaintiff to Strom's crew on March 9th was a result of retaliation or discrimination.  Additionally, losing a single overtime opportunity is not an adverse employment action.  *Miller v. N.Y. State Police*, 2019 U.S. Dist. LEXIS 143963, at *35-37 (W.D.N.Y. Aug. 22, 2019) (collecting cases).

Moreover, Plaintiff was assigned to a different crew on March 9, 2018 due to staffing shortages at a time when Connington did not know the tree crew would be working overtime that day.  56.1 Stmt. ¶¶28-33.  The evidence shows that temporary reassignments for staffing purposes are common.  Ex. H (Connington Aff.) at ¶4; Ex. E (Malone Dep.) at 33:18-23; Ex. P (Salvo Dep). at 37:9-18.  Thus, even if Plaintiff could make out a *prima facie* case—which she cannot—the Town has a legitimate, non-discriminatory reason for Plaintiff's one-day reassignment.  *See Fergus v. City of New York*, 2008 U.S. Dist. LEXIS 144256 *19 (E.D.N.Y. July 1, 2018) (employer's need for qualified staff is legitimate non-discriminatory reason for transfer).

### 2.   Plaintiff Cannot State a Claim Based on the Assignment of Truck #333

The undisputed facts show that on June 1, 2018:  truck #333 was assigned to the tree crew; Plaintiff refused to drive the truck, claiming it was unsafe because she had previously identified it as needing service; Connington did not know Plaintiff had identified it as needing service; Connington told the crew they could take other trucks instead of truck #333; another crew member drove truck #333; and though Plaintiff had the option of using another truck, Plaintiff opted to ride in truck #333 despite her protestations that it was unsafe.  56.1 Stmt. ¶¶52-56.

Having truck #333 assigned to her crew was not an adverse action for purposes of a retaliation claim.  There is no evidence that anyone attempted to force Plaintiff to drive an unsafe truck.  To the extent Plaintiff alleges that Connington yelled at her when she raised concerns about the truck that morning, she testified that she cannot recall what was said.  56.1 Stmt. ¶60.  A vague allegation of an isolated incident of yelling about department equipment does not constitute an adverse action.  Moreover, there is no evidence linking the incident to any protected conduct by Plaintiff.   Connington did not assign the truck *to Plaintiff* as alleged in the Complaint, Ex. A ¶40; he assigned it to the *crew* for any MEO II on the crew to operate.  56.1 Stmt. ¶52.  Indeed, it was operated that day by another member of the crew who felt it was safe, and was subsequently assigned to another crew the following two days, where it was operated without incident.  56.1 Stmt. ¶¶55, 57.  And, according to Plaintiff, Connington yells at everyone, not just her.  56.1 Stmt. ¶15.  As the courts repeatedly hold, "Title VII simply 'does not set forth a general civility code for the American workplace."  *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  The allegation that a supervisor in the Highway Department once yelled at Plaintiff during a dispute about the job is

262524642v.3

insufficient to sustain a retaliation claim.[8]  *See Peterson v. Long Island R.R. Co.*, 2012 U.S. Dist. LEXIS 85054, *23 (E.D.N.Y. June 19, 2012) (Plaintiff's description was "of an isolated argument, not harassment" nor did circumstances give rise to inference of retaliatory intent).  Accordingly, the Town is entitled to summary judgment on Plaintiff's retaliation claim based on the alleged conduct by Connington in March and June 2018.

## II.   The Town Is Entitled to Summary Judgment on Plaintiff's Hostile Work Environment Claims Based on Alleged Harassment by Tucker Connington

The Town also seeks partial summary judgment on Plaintiff's hostile work environment claims to the extent they are based on an alleged conduct by Connington.  The only actions by Connington alleged after the Release are the March and June 2018 incidents described above in I.E.  As shown above, the alleged conduct is not severe, pervasive harassment, indeed it is not any kind of harassment; rather, the conduct consists of the legitimate allocation of staff and equipment. Additionally, even assuming the conduct rose to the level of harassment, there is no evidence that it was motivated by a discriminatory intent.

"Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discrimination ... because of … sex.*' … The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."  *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998).  There is no evidence that Connington discriminated against Plaintiff on the basis of her sex or that he treated her any differently than he treated male employees.

Summary judgment on part of a hostile work environment claim is appropriate where the

---

[8] Moreover, when Plaintiff complained about this incident weeks later, an investigation was conducted: one witness indicated that Connington was not yelling at Plaintiff, and both witnesses confirmed that Connington gave them the alternative of taking open trucks instead of truck #333.  56.1 Stmt ¶61; Ex.II at TOWN001610-1611.

24

alleged conduct is distinct from the other elements of the hostile work environment claim. *See Sanchez v. McAllenan*, 2019 U.S. Dist. LEXIS 136596 (W.D. Wash. Aug. 13, 2019) (granting partial summary judgment on hostile work environment claim to the extent it was based on one of three forms of conduct, but denying as to the other two forms of conduct); *Francis v. Davis H. Elliot Constr. Co.*, 2013 U.S. Dist. LEXIS 33310 (S.D. Ohio, Western Div. Mar. 11, 2013) (granting partial summary judgment on hostile work environment claim against employer based on harassment by supervisor but denying motion as to harassment by coworkers).

Here, the alleged conduct by Connington is distinct in kind and legal significance from Plaintiff's other hostile work environment allegations. First, Mr. Connington was a supervisor in the Department, thus the legal basis for the Town's liability for his conduct is different than for the conduct of Ms. Malone's co-workers. *See Vance v. Ball,* 570 U.S. 421, 428 (2013). Second, the gravamen of Plaintiff's hostile work environment allegations (apart from the allegations against Connington) are that she overheard and was subjected to sexual comments, gestures, and physical touching by coworkers on the tree crew. *See, e.g.,* Ex. A at ¶¶22, 35-39. By contrast, Plaintiff's allegations of discrimination against Connington are based on disagreements over work assignments. Ex. A ¶40. Accordingly, Plaintiff's hostile work environment claims which seek to impose liability on the Town for alleged harassment by Connington should be dismissed.

### Conclusion

For the reasons above, this Court should grant the Town's motion for partial summary judgment.

Dated: White Plains, New York
      November 24, 2021

                              WILSON, ELSER, MOSKOWITZ,
                              EDELMAN & DICKER LLP
                              Attorneys for Defendant
                              Town of Clarkstown


By:    /s/ *John M. Flannery*
                              John M. Flannery
                              Eliza M. Scheibel

                              1133 Westchester Avenue
                              White Plains, NY 10604
                              (914) 323-7000
                              eliza.scheibel@wilsonelser.com
                              john.flannery@wilsonelser.com
                              Our File No.  12129.00297

262524642v.3