1

2    UNITED STATES DISTRICT COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    ----------------------------------------)

5    VICTORIA MALONE,

6                    Plaintiff,

7              vs.

8    TOWN OF CLARKSTOWN, WAYNE BALLARD in his
     personal and official capacity as
9    Clarkstown Highway Superintendent; FRANK
     DIZENZO, in his personal and official
10   capacity as Clarkstown Highway
     Superintendent; ANDREW LAWRENCE, in his
11   personal and official capacity; DAVID
     SALVO, in his personal and official
12   capacity; ROBERT KLEIN, in his personal
     and official capacity; TUCKER CONNINGTON,
13   in his personal and official capacity; and
     BRIAN LILLO, in his personal and official
14   capacity,

15                   Defendants.

16   ----------------------------------------)

17

18          REMOTE DEPOSITION OF JOHN LUTHER

19               New York, New York

20               November 17, 2020

21

22

23

24   Reported by:
     Linda Salzman
25   JOB NO. 185879

1
2          November 17, 2020
3          2:50 p.m.
4
5     Remote deposition of JOHN
6  LUTHER, the witness herein, held
7  remotely from New York, New York,
8  pursuant to Notice, before Linda
9  Salzman, a Notary Public of the
10  State of New York.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1
2  A P P E A R A N C E S:
3
4    POLLOCK COHEN
5    Attorneys for Plaintiff Victoria Malone
6       60 Broad Street
7       New York, New York 10004
8    BY:   STEVE COHEN, ESQ.
9
10    WILSON ELSER MOSKOWITZ EDELMAN & DECKER
11    Attorneys for Defendants Town of
12    Clarkstown, Tucker Connington, and
13    David Salvo
14       1133 Westchester Avenue
15       White Plains, New York 10604
16    BY:   ELIZA SCHEIBEL, ESQ.
17
18    LAWRENCE A. GARVEY & ASSOCIATES
19    Attorneys for Defendant Frank DiZenzo
20       235 Main Street
21       White Plains, New York 10601
22    BY:   BRITTANY CORDERO, ESQ.
23       LAWRENCE GARVEY, ESQ.
24
25  A P P E A R A N C E S  (continued):

1
2
3  McDERMOTT & McDERMOTT ATTORNEYS AT LAW
4  Attorneys for Defendant Robert Klein
5     293 Route 100
6     Somers, New York 10589
7  BY:  MICHAEL McDERMOTT, ESQ
8
9
10  LYONS McGOVERN
11  Attorneys for Defendant Brian Lillo
12     399 Knollwood Road
13     White Plains, New York 10603
14  BY:  LISA FANTINO, ESQ
15
16
17  DARREN JAY EPSTEIN ATTORNEY AT LAW
18  Attorney for Witnesses Dominic Santulli,
19  John Luther, and Denny Friscoe
20     254 South Main Street
21     New City, New York 10956
22  BY:  DARREN EPSTEIN, ESQ.
23
24
25

1
2  ALSO PRESENT:
3  Helen He, Intern for Pollock Cohen
4  Leslie Kahn, Town Attorney, Town of Clarkstown
5  Charles Connington, Town of Clarkstown
6  Highway Department
7  Frank DiZenzo, Clarkstown Highway
8  Superintendent
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1          J. Luther
2  opportunity ever to talk with anybody at
3  the Highway Department about this lawsuit?
4      A.    No, not specifically.
5      Q.    By the way, are you involved
6  with the union?
7      A.    Yes, I am.
8      Q.    In what role?
9      A.    I am currently a delegate with
10  the CSEA, local delegate.  Also, I chair
11  the Safety and Health Committee.
12      Q.    Okay.
13      A.    And I am the shop steward at the
14  Highway Department.
15      Q.    Were you ever Tori's union
16  delegate?
17      A.    Yes.
18      Q.    What does that involve?
19      A.    Well, the delegate job is really
20  not that much.  I would say the shop
21  steward -- which is maybe what you're
22  getting at.
23      Q.    Yes, please.
24      A.    Is maybe listening to complaints
25  that people have, events that go on on the

1          J. Luther
2  job, and then passing it up the chain of
3  command in the union.
4      Q.    And did Tori ever complain to
5  you?
6      A.    Yes.  Yes, she did.
7      Q.    When was that?
8      A.    There were a few occasions.
9  Specifically, the last one I remember very
10  vividly is the Brian Lillo chain saw.
11      Q.    Okay.  We'll come back to that
12  in a few minutes.  Okay.
13            Any others?
14      A.    I'm sure, but you'll have to
15  forgive me if I can't remember them
16  specifically.
17      Q.    Did she complain once, twice,
18  ten times to you?  What's your estimate?
19      A.    Like, officially probably under
20  ten times.
21      Q.    How about unofficially?
22      A.    Several times.
23            MS. SCHEIBEL:  Objection.
24      Q.    What does unofficially
25  complain -- what did you take that to

1          J. Luther
2  mean?
3            MS. SCHEIBEL:  Objection.
4      Q.    You can answer.
5      A.    Unofficially complain would just
6  be gripe about the job, some of the usual
7  BS that goes on down there.
8      Q.    Okay.  We'll get into some of
9  the usual BS in a few minutes.
10            Have you ever represented Tori
11  in any of her formal grievances?
12      A.    I don't believe so, no.
13      Q.    Okay.  Let's look at what is
14  marked as Plaintiff's Exhibit 1, which is
15  the Amended Complaint.  I think your
16  attorney will hand it to you.
17            (Plaintiff's Exhibit No. 1,
18      Amended Complaint, marked for
19      identification, as of this date.)
20      Q.    Take a look at paragraph 22,
21  Mr. Luther, okay, and just read it quickly
22  to yourself.
23      A.    22.
24      Q.    Paragraph 22, not page 22.
25      A.    "Throughout her employment,"

1          J. Luther
2  that one?
3            MR. EPSTEIN:  Yes.
4      A.    Okay.
5      Q.    Before I move on to that, do you
6  still socialize with Tori outside of work?
7      A.    No, I don't really see her on a
8  regular basis.
9      Q.    Why is that?
10      A.    The majority of the time, I
11  would see her at work and just haven't
12  seen her recently.
13      Q.    Okay.  Let's take a look at
14  paragraph 22.
15            First sentence, "Throughout her
16  employment with the Department, Ms. Malone
17  was regularly subjected to sexual and
18  gender-based harassment by her peers and
19  supervisors."
20            Would you agree with that
21  statement?
22            MR. McDERMOTT:  Objection.
23            MS. FANTINO:  Objection.
24            MS. SCHEIBEL:  Objection.
25      Q.    You can answer.

1                    J. Luther
2      A.    No.
3      Q.    Do you have nieces?
4      A.    No.
5      Q.    Do you know any young women of
6  friends of yours?
7            MS. SCHEIBEL:  Objection.
8      Q.    Do any of your friends have
9  daughters?
10     A.    Yes.
11     Q.    Would you want them to work at
12 the Clarkstown Highway Department?
13           MR. McDERMOTT:  Objection.
14           MS. SCHEIBEL:  Objection.
15     A.    I wouldn't want my son to work
16 there, no.
17     Q.    Much less a daughter?
18     A.    Yes.
19           MR. McDERMOTT:  Objection.
20     Q.    Did you think Tori had to endure
21 offensive conduct?
22           MR. McDERMOTT:  Objection.
23           MS. SCHEIBEL:  Objection.
24     A.    Yes.
25     Q.    Conduct of a sexual nature?

1                    J. Luther
2            MS. SCHEIBEL:  Objection.
3            MR. McDERMOTT:  Objection.
4      A.    At times.
5      Q.    Do you think that conduct was
6  ever severe?
7            MS. SCHEIBEL:  Objection.
8      A.    Some of the examples that I gave
9  you, yes, were severe.
10     Q.    Was it pervasive?
11           MR. McDERMOTT:  Objection.
12           MS. SCHEIBEL:  Objection.
13     A.    Pervasive, meaning?
14     Q.    A lot of it.
15           MS. SCHEIBEL:  Objection.
16     A.    There was a lot of it, yes.
17     Q.    Was it intimidating?
18           MS. SCHEIBEL:  Objection.
19     A.    Not to me, no.
20     Q.    But to Tori?
21           MS. SCHEIBEL:  Objection.
22     A.    You'd have to ask her.
23     Q.    Did you take it as abusive
24 towards Tori?
25           MS. SCHEIBEL:  Objection.

1                    J. Luther
2      A.    Somewhat.
3      Q.    Ever threatening towards Tori?
4            MR. McDERMOTT:  Objection.
5            MS. SCHEIBEL:  Objection.
6      A.    With the exception of the key
7  box and the chain saw, no.
8      Q.    But those two incidents were
9  threatening?
10           MS. SCHEIBEL:  Objection.
11     Q.    You may answer.
12     A.    Those were the only two that I
13 actually are aware of that would be, yes.
14     Q.    I'm sorry.  I didn't hear the
15 end of the sentence.
16     A.    Those would be the only two
17 incidents that were threatening, I
18 believe.
19     Q.    Do you think Tori was
20 discriminated against because of her sex?
21           MR. McDERMOTT:  Objection.
22           MS. SCHEIBEL:  Objection.
23     A.    Yes.
24     Q.    Do you think that Wayne Ballard
25 allowed a hostile work environment to

1                    J. Luther
2  continue while he was superintendent?
3            MS. SCHEIBEL:  Objection.
4      A.    Yes.
5      Q.    Did he encourage it?
6            MS. SCHEIBEL:  Objection.
7      A.    No.
8      Q.    Did he contribute to it?
9            MS. SCHEIBEL:  Objection.
10     A.    Not that I personally saw.
11     Q.    Did Frank DiZenzo in your
12 opinion allow a hostile work environment
13 to continue while he was superintendent?
14           MS. SCHEIBEL:  Objection.
15     A.    The conduct never changed.
16     Q.    So is that a yes, do you think?
17     A.    Yes.
18     Q.    Did he encourage it?
19           MS. SCHEIBEL:  Objection.
20     A.    I never personally witnessed him
21 encourage it, no.
22     Q.    Did he contribute to it?
23           MS. SCHEIBEL:  Objection.
24     A.    Again, I never saw him
25 personally contribute to it.

J. Luther

1
2     Q.    Did he contribute to it with the
3 Go Girl?
4           MS. SCHEIBEL:  Objection.
5     A.    Again, I only heard about that
6 incident second hand.
7     Q.    Did Tucker Connington allow a
8 hostile work environment to continue while
9 he was deputy?
10          MS. SCHEIBEL:  Objection.
11    A.    Yes.
12    Q.    Did he encourage it?
13          MS. SCHEIBEL:  Objection.
14    A.    No.
15    Q.    Did he contribute to it?
16          MS. SCHEIBEL:  Objection.
17    A.    No.
18    Q.    Do you think over time the
19 individual slights, slurs, comments,
20 gestures, incidents towards Tori added up
21 to a serious situation?
22          MR. McDERMOTT:  Objection.
23          MS. SCHEIBEL:  Objection.
24    A.    Yes.
25    Q.    Did you see it have any effect

J. Luther

1
2 on her?
3           MS. SCHEIBEL:  Objection.
4     A.    Not until the chain saw incident
5 and --
6           MS. FANTINO:  Objection.
7           (Whereupon, the requested
8           portion was read back by the court
9           reporter.)
10    A.    Yes, not until the chain saw
11 incident.  I think that was the final
12 straw, though.
13    Q.    In what way the final straw?
14          MS. FANTINO:  Objection.
15          MS. SCHEIBEL:  Objection.
16    A.    Well, I can remember her phone
17 call made to me that day that it happened
18 and she said she was sick of it and she
19 was not going to take it anymore.
20    Q.    Is there anything else you would
21 like to add to what we've talked about
22 today?
23    A.    No.
24          MR. COHEN:  Then I have no more
25          questions and I thank you.  Now others

J. Luther

1
2 may have questions, but thank you.
3           THE WITNESS:  Could I request a
4           break?
5           MR. COHEN:  Yes.
6           Does anybody have questions for
7           him?
8           MS. FANTINO:  Yes, Lisa Fantino
9           will.
10          MS. SCHEIBEL:  This is Eli.  I
11          might have one or two questions.
12          (Thereupon, a recess was taken
13          and the proceedings continued as
14          follows:)
15 BY MR. COHEN:
16    Q.    Two things, Mr. Luther.  I had
17 one other question for you.
18          We wanted to clarify which Chris
19 you were referring to in the last -- which
20 Chris were you referring to in the crew?
21    A.    In my current crew?
22    Q.    No, when Bob Gaglione was with
23 you.
24    A.    Rob Gaglione is in my current
25 crew, so I would assume you were talking

J. Luther

1
2 about Chris Frank.
3           MR. COHEN:  Chris Frank.
4           Eli, you win.  You got it right.
5     Q.    So I have one other question for
6 you, Mr. Luther.
7           Okay?
8     A.    Okay.
9     Q.    You said you wouldn't even want
10 a son to work in the Highway Department.
11 Why is that?
12    A.    It's just not a good
13 environment.  I would hope they would do
14 something better with their lives.
15    Q.    Why is it not a good
16 environment?
17    A.    The clickiness of the Highway
18 Department was one of the things I've
19 never really been able to grasp.
20          You have certain groups of
21 friends and the comments that are made,
22 innuendo, it's a little tough to work
23 around constantly.
24    Q.    Is it a place that shows a lot
25 of favoritism?