UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

VICTORIA MALONE,

Plaintiff,

vs.

TOWN OF CLARKSTOWN, WAYNE BALLARD in his Personal and official capacity as Clarkstown Highway Superintendent; FRANK DIZENZO, in his personal and official Capacity as Clarkstown Highway Superintendent; ANDREW LAWRENCE, in his personal and official capacity; DAVID SALVO, in his personal and official capacity; ROBERT KLEIN, in his personal and official capacity; TUCKER CONNINGTON, in his personal and official capacity; and BRIAN LILLO, in his personal and official capacity,

Defendants.

-----------------------------------------------

REMOTE DEPOSITION OF ROBERT KLEIN

Friday, December 4, 2020

Reported by:
LISA M. MURACO
JOB NO. 187335

Friday, December 4, 2020
10:00 a.m.

REMOTE Deposition of ROBERT KLEIN, held VIA ZOOM, before LISA M. MURACO, a Notary Public of the State of New York and New Jersey.

A P P E A R A N C E S:
(VIA VIDEOCONFERENCE)

POLLOCK COHEN
Attorneys for Plaintiff
60 Broad Street
New York, New York 10004
BY: STEVE COHEN, ESQ.

WILSON ELSER MOSKOWITZ EDELMAN & DICKER
Attorneys for Defendants Town of Clarkstown, Tucker Connington, and David Salvo
1133 Westchester Avenue
White Plains, New York 10604
BY: JOHN FLANNERY, ESQ.

A P P E A R A N C E S (CONTINUED):
(VIA VIDEOCONFERENCE)

LAWRENCE A. GARVEY & ASSOCIATES
Attorneys for Defendant Frank DiZenzo
235 Main Street
White Plains, New York 10601
BY: LAWRENCE GARVEY, ESQ.

McDERMOTT & McDERMOTT ATTORNEYS AT LAW
Attorneys for Defendant Robert Klein
293 Route 100
Somers, New York 10589
BY: MICHAEL McDERMOTT, ESQ.

LYONS McGOVERN
Attorneys for Defendant Brian Lillo
399 Knollwood Road
White Plains, New York 10603
BY: KYLE McGOVERN, ESQ.

A P P E A R A N C E S (CONTINUED):
(VIA VIDEOCONFERENCE)

ALSO PRESENT:
Helen He, Intern for Pollock Cohen
Leslie Kahn, Town Attorney, Town of Clarkstown
Charles Connington, Town of Clarkstown Highway Department
Frank DiZenzo, Clarkstown Highway Superintendent

R. KLEIN

believe I said: Hockey fight. And I grabbed the back of her sweatshirt jacket and I pulled it up over her head.

Q. Did this happen one time or more than one time?

A. I believe that was the only time.

Q. Okay.

So if she testified that it happened two times?

A. Yeah, I don't remember a second time.

Q. Okay.

Were you intoxicated when this happened?

A. No.

Q. Okay.

Is pulling a woman's shirt over her head during the workday, workplace appropriate behavior?

MR. McDERMOTT: Objection.

MR. FLANNERY: Objection.

MR. McDERMOTT: It wasn't -- there was not testimony that he pulled her shirt over her head.

R. KLEIN

MR. COHEN: What -- forgive me.

BY MR. COHEN:

Q. How did you describe it, Mr. Klein?

A. Hockey fight.

Q. He's pulling the shirt over. What she said -- what you read from her notes.

Prior, he had ripped my shirt off using a hockey move, May 3rd.

A. That's not correct.

Q. Okay.

So what is correct?

A. I pulled her sweatshirt jacket up over her head.

Q. Okay.

Was she wearing anything underneath?

A. Yeah, she had a shirt on.

Q. She had a shirt on?

A. Yes.

Q. And if she testified that she didn't have a shirt on?

A. She testified she did not have a shirt on?

Q. Yeah, that it was just her bra. A sports bra.

R. KLEIN

MR. McDERMOTT: Objection.

MR. FLANNERY: Objection.

MR. McDERMOTT: I'm confused by the questioning. Because the witness is testifying that she -- that there was a sweatshirt jacket. Okay.

And you're -- it sounds like you're questioning that she only had a bra on under the sweatshirt jacket.

MR. COHEN: Yeah. I'm sorry.

MR. McDERMOTT: Clarify the questioning.

MR. COHEN: Sure.

BY MR. COHEN:

Q. If Tori testified that she only had a sports bra on underneath --

MR. McDERMOTT: Underneath what?

MR. COHEN: That jacket, that sweatshirt jacket.

Q. Would you have any reason to disagree with her?

A. Yeah. Who only wears a sports bra under a sweatshirt jacket?

Q. Okay.

R. KLEIN

Is it -- in either case, is pulling someone's sweatshirt -- you pulled it over her head?

A. Yes, I did that.

Q. You did that.

In a hockey move?

A. Yes.

Q. Is that workplace appropriate behavior?

MR. FLANNERY: Objection.

MR. McDERMOTT: Objection.

A. Probably not.

Q. Did you view it as a joke?

A. Yes, we were horseplaying.

Q. Did she view it as a joke?

A. We were horseplaying.

Q. Okay. All right.

Third paragraph, if you read that aloud.

A. The Brian Lillo one?

Oh, no, no, no. Cutting down --

Q. Above Brian Lillo.

A. (As read): Cutting last two pine trees on Kendall, he tackled me to the ground

R. KLEIN

and slapped my butt multiple times.

Q. Do you have any recollection of that?

A. Yes.

Q. What happened?

A. She had my rake. I wanted my rake back. She refused to give it back. So I ran up to her to get it. And she started running away.

And she had her sweatshirt jacket on again. I grabbed the hood. She fell to the ground.

Q. And then?

A. It was in the yard.

Q. And then what happened?

A. And then she started kicking and screaming. And I sat on her legs and I smacked her butt.

Q. Okay.

Horseplay?

A. Yup.

Q. Okay.

Did she complain about it?

A. No.

R. KLEIN

Q. She didn't say anything to you?

A. She might have said: Blue, stop.

Q. Okay.

But this was all in good fun?

A. Yes.

Q. Workplace appropriate behavior?

MR. McDERMOTT: Objection.

MR. FLANNERY: Objection.

A. Probably not.

Q. I'm sorry. I didn't hear the answer.

A. Probably not.

Q. Okay.

Pivoting a bit.

What's a lopper, Mr. Klein?

A. A lopper is for trimming tree branches.

Q. And how does it do that?

Is it a blade or is it something else?

A. It's like a trimmer. It's sort of like a pair of scissors.

Q. Okay.

I'm going to show you Exhibit

R. KLEIN

Number 5.

(Exhibit 5, photo, marked for identification.)

MR. COHEN: And I don't remember -- forgive me. I got to look at it.

What the -- this doesn't have -- this is called Exhibit B, and I believe this is from the original complaint.

BY MR. COHEN:

Q. Do you recall -- have you ever seen this photo, before?

A. Yes.

MR. McDERMOTT: Just put it up on the screen.

MR. COHEN: Oh, I'm sorry.

Helen, could you put it up on the screen.

I'm sorry. Go ahead.

Q. Have you ever seen this photo, before?

A. Yes.

Q. Where did you see it?

A. With my attorney.

Q. Okay.

R. KLEIN

Do you know whose leg it is?

A. That's Tori's.

Q. And you see the scratch mark in the middle?

A. Yes.

Q. Do you know how it came about?

A. Yes.

Q. How did it come about?

A. It wasn't with a pair with loppers. It was with a pole saw.

Q. Okay.

So what happened?

A. She was standing there. I had the pole saw in my hand. She has all these little strings coming off her jeans that she wore every day. Big holes in them.

And I went to grab one of the little strings, and I believe she turned a little bit and the blade caught her leg.

Q. Okay.

So it was an accident?

A. Yes.

Q. What were you doing grabbing the strings?

BY MR. COHEN:
Q. Would you say to somebody, come closer, when you're about to use a chainsaw?
MR. FLANNERY: Objection.
MR. McGOVERN: Objection.
MR. COHEN: I'm sorry. What you did say? I didn't hear your answer.
A. No.
Q. Why wouldn't you?
A. Because it could be, possibly be dangerous.
Q. Okay.
I want to show you Exhibit 1B, which is another part of the amended complaint. Okay.
I want to show you paragraph 42.
(Exhibit 1B, part of amended complaint, marked for identification.)
BY MR. COHEN:
Q. Could you read that aloud, please.
A. (As read): On one occasion, while Lillo was removing a tree, he deliberately positioned Ms. Malone so that she would be hit by wood chips and shavings discharged by his

chainsaw running at high speed. This was not a careless or negligent act. It was a deliberate physical assault.
McDermott, who saw the incident, taunted Ms. Malone by asking her if she needed help getting wood chips and dust out of her shirt.
Lillo also in 2018, harassed, humiliated, and verbally abused Ms. Malone by stating in front of the rest of the crew, in substance, that only a mentally challenged person would hit on her.
Q. Do you recall an incident with Mr. Lillo involving a chainsaw?
MR. McGOVERN: Objection.
MR. FLANNERY: Objection.
MR. McDERMOTT: Objection. An incident involving a chainsaw. That's so broad, Steve.
BY MR. COHEN:
Q. Okay.
Let's go back to the very first sentence in number 42.
Do you remember an incident

involving Lillo removing a tree and deliberately positioning Ms. Malone so that she would be hit by wood chips and shavings?
A. No.
MR. McGOVERN: Objection.
Q. Okay.
So let's go to Exhibit Number 8, which is Town 4441 and 4534. And this is a transcript of an interview you gave in July of 2018.
(Exhibit 8, interview transcript, marked for identification.)
MR. McDERMOTT: I'm sorry. What page, Steve?
MR. COHEN: I'm going to go there.
Q. Do you recall -- have you looked at this document before?
A. The interview?
Q. Yeah.
A. Very briefly.
Q. Did you look at it before coming here today?
A. Very briefly.
Q. Okay.

Why don't we go down to -- I think it's page 19 of this document, Town 4459.
A. Page 19, you said?
Q. Yeah, 19.
Read to yourself from the top.
A. Okay.
(Document review.)
Q. In fact, why don't you go back a page so you can see the context. Read to yourself starting on page 18.
(Document review.)
Q. Okay.
Have you read that page?
A. I read 18.
Q. Okay. Now, I want you to read 19.
(Document review.)
A. Okay.
Q. Do you remember giving this testimony?
A. Not particularly, no.
Q. So now that you've had a chance to reread it, do you recall the incident any better?
MR. McGOVERN: Objection.

R. KLEIN

orders.

Q. Okay.

Did you intervene in this situation, where Brian said: Come closer?

MR. McGOVERN: Objection.

MR. FLANNERY: Objection.

A. No, I don't believe I did. No.

Q. Okay.

And why was that?

A. I couldn't give you an answer right now. I don't really recall.

Q. Do you recall if Tori was visibly upset by -- withdrawn.

First, do you know if Tori got hit by chips during this incident?

A. Yes.

Q. Was she visibly upset by it?

A. I do believe. I don't remember her exact reaction.

Q. But you believe she was upset?

A. I do believe.

(Multiple speakers.)

Q. And what makes you -- I'm sorry. I cut you off. I apologize.

R. KLEIN

A. I don't know.

Q. Okay.

What makes you recollect that she was upset?

A. I think she just, like, yelled at him or something. I don't know.

Q. Okay.

And what did you do?

A. I do not remember.

Q. Do you remember your reaction at all?

A. No.

Q. Did you laugh?

A. I don't know.

Q. Okay.

If you testified during this 2018 interview that you laughed, would that refresh your recollection?

MR. FLANNERY: Objection.

A. No.

Q. Okay.

Did Chris McDermott see this, as well?

A. I don't recall who was there.

R. KLEIN

Q. Okay.

If Tori testified that he taunted her by asking if she needed help getting the shavings out of her shirt, would that surprise you?

MR. FLANNERY: Objection.

MR. McGOVERN: Objection.

MR. McDERMOTT: Objection.

A. Yes.

Q. It would surprise -- why would it surprise you?

MR. FLANNERY: Objection.

A. Why would it surprise me?

Q. Yeah.

A. I don't believe Chris would say that.

Q. Okay.

And do you have any recollection of who else was there?

A. I -- no. I believe it was me, Chris, and Brian. I think Tori might have been driving the roll-off that day.

Q. Okay.

Doesn't the town have a policy to

R. KLEIN

wear safety equipment when operating near a chainsaw?

MR. FLANNERY: Objection.

A. I don't know.

Q. Would it make sense to you, as a foreman, to have a policy of people wearing hard hat and safety glasses?

A. Yes.

Q. Okay.

And she was wearing neither, correct?

MR. FLANNERY: Objection.

A. I believe she wasn't.

Q. Okay.

In fact, you testified on page -- if you look at 4465, that she was wearing neither?

A. Okay.

Q. Was Brian Lillo's calling Tori to come closer while he was operating a chainsaw appropriate workplace behavior?

MR. FLANNERY: Objection.

MR. McGOVERN: Objection.

MR. McDERMOTT: Objection.

A. Probably not.

R. KLEIN

trees.

Q. The only people in the highway department?

A. Yes, that go up in the bucket truck and cut trees on a daily basis.

Q. Have you ever seen a certificate of some sort, a certification of some sort?

A. No.

Q. Did anybody tell you they were the only two people certified?

A. Did anyone tell me? No.

Q. In fact --

A. I knew going into the tree crew, they were the only two.

Q. You knew that how?

A. Just from being at the highway department.

Q. Okay.

Do you recall Tori ever going up in the bucket?

A. I believe once or twice, just to check it out.

Q. Was she certified?

A. To go up in the bucket, I believe

R. KLEIN

you don't have to certified.

Q. To your knowledge, what do you have to be certified to do?

A. Actually, to do it at the highway department, you don't have to be certified. To cut for O & R, you have to be certified.

Q. We're not talking about O & R here, are we?

A. No.

Q. So what does Mr. DiZenzo's memo about Mr. Lillo being certified on operation of our tree truck mean?

MR. FLANNERY: Objection.

A. To be honest, I don't know.

Q. Means nothing, doesn't it?

A. You don't have been certified to go up in a tree truck, as far as I know.

Q. Thank you. Okay.

Bear with me. I'm trying to move ahead quickly.

A. Okay.

Q. Did Mr. Salvo and Ms. Malone have any issues with each other in your presence?

MR. McDERMOTT: Objection.

R. KLEIN

MR. FLANNERY: Objection.

A. Issues in my presence?

Q. Yeah.

Do they get along?

A. There were times they did not get along.

Q. Had they been good friends?

MR. FLANNERY: Objection.

A. At times, yes.

Q. Do you have any idea if anything happened between them?

A. I don't know what happened between them.

Q. Do you know if Mr. Salvo had any interest in Tori romantically?

MR. FLANNERY: Objection.

A. I have no idea.

Q. He never said anything to you about it?

A. No.

Q. Did she ever say anything to you about Dave Salvo?

A. No.

Q. Okay.

R. KLEIN

Let's go back -- we're going to just finish it up. I want to show you a couple more videos.

MR. COHEN: Exhibit 10, please, Helen.

(Exhibit 10, video, marked for identification.)

MR. COHEN: This is a video. And here we go.

(Video playing.)

BY MR. COHEN:

Q. Had you seen this video before?

A. Yes, from my attorney.

Q. Okay.

Do you know who took the video?

A. No. I would guess -- no, I don't know.

Q. Okay.

Were you present when it was filmed?

A. I do not recall this.

Q. Who is in the video?

A. Dave Salvo.

Q. And what's going on?

A. He's doing squats with a chainsaw