UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

VICTORIA MALONE,                                  :
                        Plaintiff,        :

v.                                                :
                                     :

TOWN OF CLARKSTOWN, FRANK        :          **OPINION AND ORDER**
DIZENZO, individually and as Clarkstown   :
Highway Superintendent, DAVID SALVO,   :          19 CV 5503 (VB)
individually and in his official capacity, and   :
ROBERT KLEIN, individually and in his official   :
capacity,                                         :
                      Defendants.        :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Victoria Malone brings this action under Title VII of the Civil Rights Act of

1964 ("Title VII"), Section 296 of the New York State Human Rights Law ("NYSHRL"), and 42

U.S.C. § 1983 ("Section 1983"), alleging defendants the Town of Clarkstown (the "Town"),

Frank DiZenzo, David Salvo, and Robert Klein discriminated and retaliated against her based on

her sex.

       Before the Court is the Town's motion for partial summary judgment on plaintiff's

retaliation claims against the Town and, solely with respect to conduct by former defendant

Tucker Connington, her hostile work environment claims against the Town.  (Doc. #175).[1]

       For the reasons set forth below, the motion for partial summary judgment is GRANTED

IN PART and DENIED IN PART.

       The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

---

[1]    The Town has not moved for summary judgment on plaintiff's Section 1983, Title VII, and NYSHRL claims against the Town, and defendants DiZenzo, Salvo, and Klein have not moved for summary judgment on plaintiff's Section 1983 and NYSHRL claims against them.

**BACKGROUND**

The parties have submitted briefs, affidavits and declarations with exhibits, and statements of undisputed material facts pursuant to Local Civil Rule 56.1, which together reflect the following factual background.

I.      Factual Background

Plaintiff has been a full-time employee of the Town since 2009.  From 2009 until 2019, she worked for the Town's Highway Department as a Machine Equipment Operator ("MEO").

Plaintiff claims her tenure at the Highway Department was permeated with sex-based discrimination and retaliation by her co-workers and supervisors.  The Court will first explain the structure of the Highway Department and then describe the actions by plaintiff's supervisors and coworkers that are at issue in this motion.

A.      Structure of the Highway Department

The Highway Superintendent is an elected official that runs the Highway Department. Reporting directly to the Highway Superintendent is the General Foreman.  Reporting to the General Foreman are three deputies, each of whom is responsible for a geographic sector of the town.  Reporting to each deputy are several foremen, each of whom manages a crew of laborers and MEOs such as plaintiff.

Each day, each deputy assigns the laborers and MEOs in that deputy's sector to a crew and a foreman.  Once workers are assigned to a particular crew for the day, the foreman of that crew divides responsibilities among the crew members.

From January 2016 through June 28, 2018, plaintiff was primarily assigned to the "tree crew" along with defendants Dave Salvo and Robert Klein, former defendant Brian Lillo, and

2

non-party Denny Friscoe.  Klein was foreman of the tree crew during this time.  Salvo, Lillo, and plaintiff all held the position of MEO II.

Wayne Ballard was Highway Superintendent for the relevant time period until January 2016, when defendant Frank DiZenzo took office and served until 2018.  DiZenzo had been a member of the tree crew with plaintiff prior to his election as Highway Superintendent.

Tucker Connington was a crew foreman from 2011 through February 2018, at which point he was promoted to General Foreman.  Plaintiff never worked on a crew with or under Connington as foreman, but was subject to his supervision once he became General Foreman.

Rory O'Connell was also an employee of the Highway Department during this time; based on the record, it appears he was a laborer or an MEO on a different crew from plaintiff. (See Doc. #178-30 at ECF 3).[2]

B.    Ballard's Conduct

At some point during 2010, after plaintiff's father announced he would run for Highway Superintendent against Ballard, Ballard informed plaintiff she could no longer use the women's restroom on the administrative side of the Highway Department building.  This was the only women's restroom, although non-gender assigned restrooms were available on the operations side of the building.  Plaintiff contends that, without a women's restroom to change in, she had to change in a closet infested with rats.

Around this time, plaintiff complained to Friscoe, one of her co-workers on the tree crew, that Ballard was stalking her.  (Doc. #184-9 ("Friscoe Tr.") at 36)[3]

---

[2]    "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

[3]    Citations to "Tr. at __" refer to the page number at the top right-hand corner of each transcript page.

C.      2014 Union Grievance and Settlement Agreement

On June 22, 2014, plaintiff and a male co-worker filed a union grievance alleging they had been wrongfully denied promotions to the position of MEO II. Although the precise job responsibilities of an MEO II are unclear, the parties agree it represents "the top step of the salary schedule."  (Doc. #184-1 ("Pl. 56.1") ¶ 5).

To resolve that dispute, plaintiff, who was represented by an attorney, executed a Stipulation of Settlement and General Release on April 29, 2016, pursuant to which plaintiff was promoted to MEO II retroactive to January 1, 2016.  (Doc. #178-26 ("2016 Settlement Agreement")).  The 2016 Settlement Agreement included a release of all claims against the Town and its employees, including but not limited to claims arising under Section 1983, Title VII, NYSHRL, and claims for retaliation arising through April 29, 2016.

D.      Connington's Conduct

During the relevant time period, Connington was aggressive and verbally abusive to Highway Department employees, including plaintiff.  (See Doc. #184-4 at ECF 9; Doc. #184-2 ("Pl. Tr.") at 159).

Specifically, on or around September 12, 2014, plaintiff and her mother drafted an unsigned letter claiming that Connington—who was a foreman on a separate crew at the time—bullied plaintiff by making "disgusting noises" when she passed him and blocking doorways she tried to enter.  (Doc. #178-24).  Plaintiff does not know whether the letter was ever submitted to the Town or whether anyone at the Town ever received it.  However, Connington stopped making the noises and blocking the doorway after plaintiff drafted the letter.

In addition, on June 1, 2018, plaintiff's tree crew foreman[4] assigned plaintiff to drive a truck designated as "roll-off truck #333."  Plaintiff refused because she had previously written this particular truck up as needing maintenance, which she claims she submitted to the tree crew foreman.  Connington—who had become General Foreman by that time—yelled at plaintiff for refusing to drive the truck, including exclaiming that "[n]obody knows what [plaintiff is] talking about!" and that plaintiff "never wrote anything up!"  (Doc. #178-39 at ECF 3).

      E.    <u>O'Connell's Conduct</u>

Plaintiff claims that during the relevant time period, O'Connell, a member of another crew, subjected plaintiff to harassment that included trying to close her fingers in unspecified doors and blocking her in the parking lot.

On March 27, 2015—after plaintiff complained about this conduct to the General Foreman—the General Foreman held a meeting with plaintiff and O'Connell at which a union representative was present.  Following the meeting, a reprimand was placed in O'Connell's file.

On January 7, 2016, plaintiff filed a written complaint regarding another incident on December 22, 2015, during which O'Connell purportedly screamed at plaintiff in the parking lot to "shut [her] fucking mouth."  (Doc. #178-36 at ECF 3–4).

      F.    <u>DiZenzo's Conduct</u>

Plaintiff contends that prior to 2016, DiZenzo, while he was still a part of the tree crew, regularly and repeatedly harassed plaintiff, including by making sexually explicit verbal offers

---

[4]     The acting foreman of the tree crew on June 1, 2018, was Chris McDermott.

and gestures towards plaintiff and pulling plaintiff's pants aside "to see her underwear." (Friscoe Tr. at 46–48).

According to plaintiff, this conduct continued following DiZenzo's election as Highway Superintendent in January 2016. Specifically, DiZenzo gave plaintiff a gift that included a "Go-Girl"—a device that purportedly enables women to urinate while standing—which plaintiff found to be highly inappropriate. The parties dispute the timing of the gift, which the Town contends occurred sometime in late 2015 or early 2016, and plaintiff contends occurred sometime after January 2016.

 G. <u>Klein's Conduct</u>

The record reflects three separate incidents of purported physical assault and harassment by Klein—plaintiff's tree crew foreman—although the timing of each incident is unclear. First, Klein pulled plaintiff's sweatshirt over her head. (Doc. #184-11 ("Klein Tr.") at 118). Second, Klein cut plaintiff's leg with a pole saw. (Klein Tr. at 125). Third, Klein pushed plaintiff into the ground and smacked her buttocks. (Klein Tr. at 122).

On July 23, 2018, during an interview with the Town Attorney's office, plaintiff complained of harassment by a foreman, who she declined to identify at the time. The Town identified the alleged harasser as Klein and separated plaintiff and Klein onto different crews, referred the matter to the police, and began to investigate internally.

 H. <u>Salvo's Conduct</u>

Plaintiff contends that on one occasion, the timing of which is unclear from the record, Salvo, a co-member of the tree crew, pushed her into the ground at a graveyard. (Pl. Tr. at 89).

I.      Claims Regarding Missed Overtime

On March 9, 2018, Connington assigned plaintiff to a different crew than usual.  The parties agree plaintiff's typical crew had more MEO-IIs than available machines that day and that the crew to which she was reassigned did not have enough MEO IIs to operate their machines.  According to the Town, plaintiff was chosen for reassignment due to her level of seniority and because she was not as skilled at operating the bucket truck.[5]  Plaintiff disputes this, citing her own deposition testimony and deposition testimony from Klein that in fact, plaintiff had worked in the bucket truck previously.

Because of this reassignment, plaintiff worked six hours less of overtime than her colleagues worked in her usual crew.  (Doc. # 178-8 ¶ 16).  Connington did not know what crews would work overtime at the time he re-assigned plaintiff.

On March 13, 2018, plaintiff was assigned back to the tree crew, which did not work overtime.  That day, Salvo complained to Connington and the Highway Department deputy that plaintiff was unsafely directing traffic at a work site.  Plaintiff disputes the complaint's legitimacy, claiming it was made up.

In response to Salvo's complaint, Connington removed both Salvo and plaintiff from the tree crew and assigned them to different crews for work during March 14, 2018.  The tree crew did not work overtime that day.

Plaintiff left for vacation the next day.  The day she returned, she met with Salvo and her union representative, during which the complaint was resolved, and she was placed back on the

---

[5]      The "bucket truck," also referred to in the record as the "tree truck," appears to be a central piece of equipment in the tree crew's work, although neither party explicitly describes it or so states.

tree crew with Salvo.  No further action was taken on Salvo's complaint and plaintiff was not penalized or reprimanded for her purported unsafe traffic directions in any way.

On April 5, 2018, plaintiff filed a union grievance claiming she had been moved out of the tree crew on March 13, 2018, and therefore missed overtime opportunities.

J.    Lillo's July 2018 Conduct

On July 10, 2018, one of the Highway Department deputies forwarded a written complaint from plaintiff to Connington and DiZenzo.  The complaint stated Lillo, a co-member of the tree crew, continually harassed plaintiff, including cutting a tree in front of her such that tree shavings got in her eyes and ears; verbally mocking plaintiff by saying "only men playing with half a deck would hit on [plaintiff]" and calling her an ogre; and kicking a chair and swinging a chain saw at her head.  (Doc. #178-40, at ECF 3–4).

Upon learning of plaintiff's complaint, the Town reassigned plaintiff to a different crew in which Lillo did not work while the Town's Attorney and the Clarkstown Police Department investigated.  Specifically, plaintiff and Klein were transferred to the "brush crew," where she remained until raising the complaints against Klein in her July 23, 2018, interview with the Town Attorney discussed above.  Plaintiff was then moved to a third crew, separate from Klein, where she remained until March 2019.

The Town asserts it removed plaintiff from the tree crew instead of Lillo because Lillo was certified to operate the bucket truck and plaintiff was not.  Plaintiff disputes this, arguing her removal from the tree crew was retaliation for her written complaint about Lillo and that she is qualified to operate the bucket truck, and had done so before, for which no certification is necessary.

The Town concluded Lillo did not violate the Town's anti-harassment policy and there was no evidence his conduct was motivated by plaintiff's sex.  The police dismissed any charges against Lillo arising from the incident.  Plaintiff disputes any finding of the Town or the police department, arguing these investigations were sham investigations in an effort to undermine plaintiff's credibility.

    K.    <u>Lillo's December 2018 Conduct</u>

On January 9, 2019, plaintiff submitted to her union a list of written complaints regarding Lillo's behavior.  Specifically, plaintiff claimed:

(i)       on December 13, 2018, Lillo aggressively opened the key box when plaintiff attempted to clock in;

(ii)      on December 14, 2018, Lillo stood very close to plaintiff in the vestibule and looked at plaintiff before "slam[ing] the door to the key box and storm[ing] out;"

(iii)     on December 27, 2018, Lillo whipped an air hose that he had been using to fill a tire into the air as plaintiff was walking toward him; and

(iv)     on unspecified dates in December 2018, Lillo aggressively threw a coffee cup into the garbage in front of plaintiff, grazing her; bumped her bookbag with his arm; and stared at plaintiff.

(Doc. #178-23).  The Town and its police department investigated these incidents and determined the allegations were unsubstantiated.  Plaintiff again disputes the findings of the Town as sham investigations to undermine her credibility.

    L.    <u>Transfer to the Town Garage</u>

On February 28, 2019, plaintiff's attorney sent the Town a letter alleging plaintiff had been the victim of two incidents of retaliation—specifically, that plaintiff had been assigned to

drive two different trucks plaintiff believed had been intentionally tampered with.  The letter asked the Town to inform plaintiff's attorney "of the steps the Town will take to investigate these incidents and ensure [plaintiff's] safety."  (Doc. #178-13 at ECF 9).

The Town contacted the police and, in consultation with plaintiff's counsel, determined to transfer plaintiff to work in the Town Garage, a department separate from the Highway Department, where her brother-in-law was the supervisor.  Plaintiff did not object to the transfer. This transfer was intended to be temporary while the incidents that plaintiff reported were investigated.

Following its investigation, the police concluded there was no evidence of tampering with the trucks.  Plaintiff also challenges the legitimacy of that investigation.  Plaintiff never requested to return to the Highway Department—she was invited to return to the Highway Department after a new Highway Superintendent took office in January 2020, but refused.

## DISCUSSION

I.   Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[6]

---

[6]   Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of her case on which she has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 322–23.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury reasonably could find for her. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary

judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).  Bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.  Claims Barred by the 2016 Settlement Agreement

The Town argues any claim for retaliation based on Ballard banning plaintiff from using the women's restroom in 2010 is barred by the 2016 Settlement Agreement.

The Court agrees.

Plaintiff was initially banned from using the women's restroom in 2010 and claims that ban continues today.  Therefore, it is a claim related to a "change[] in the terms and conditions of her employment with the Town" that arose prior to April 29, 2016, and plaintiff waived it by executing the 2016 Settlement Agreement  (2016 Settlement Agreement at 2).  See Madison Square Garden, L.P. v. NHL, 2008 U.S. Dist. LEXIS 80475, at *17–19 (S.D.N.Y. Oct. 10, 2008) (dismissing allegations based on continuing conduct that began prior to the effective date of a release of applicable claims).

Accordingly, plaintiff's retaliation claims against the Town arising out of the women's restroom ban must be dismissed.

III.  Title VII and NYSHRL Retaliation Claims

The Town argues summary judgment must be granted with respect to plaintiff's remaining retaliation claims because plaintiff fails to raise a genuine issue of material fact that she engaged in any protected activity, and, even if she did engage in protected activity, she did not suffer materially adverse actions that were caused by her engagement in such protected activity.

The Court agrees with respect to all of plaintiff's retaliation claims, except for her retaliation claims arising out of the alleged assaults by Klein.

A.      Legal Standard

Claims for retaliation under Title VII and the NYSHRL are both governed by the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Dixon v. Int'l Fed'n of Accts., 416 F. App'x 107, 109 (2d Cir. 2011) (summary order).

To make out a prima facie case of retaliation under Title VII or the NYSHRL, a plaintiff must show:  "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity."  Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013).

A "protected activity" entails "action taken to protest or oppose statutorily prohibited discrimination."  Jarrell v. Hosp. for Special Care, 626 F. App'x 308, 311 (2d Cir. 2015) (summary order).  Therefore, complaints of unfair treatment or "generalized grievances about an unpleasant or even harsh work environment, without more . . . fail to rise to the level of protected activity."  Green v. Mount Sinai Health Sys., Inc., 826 F. App'x 124, 125 (2d Cir. 2020) (summary order).  "The onus is on the speaker to clarify to the employer that [she] is complaining of unfair treatment due to [her] membership in a protected class."  Aspilaire v. Wyeth Pharms., Inc., 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009).

To establish an adverse employment action for purposes of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from

making or supporting a charge of discrimination." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006).

For purposes of a retaliation claim, causation can be established:  "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus against the plaintiff by the defendant." <u>Gordon v. N.Y.C. Bd. of Educ.</u>, 232 F.3d 111, 117 (2d. Cir 2000).  Temporal proximity between the adverse action and the protected activity may be sufficient to establish a prima facie element of causation on its own.  <u>Parron v. Herbert</u>, 768 F. App'x 75, 77 (2d Cir. 2019) (summary order).  But "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." <u>Chung v. City Univ. of New York</u>, 605 F. App'x 20, 23 (2d Cir. 2015) (summary order).

"Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." <u>Raniola v. Bratton</u>, 243 F.3d 610, 625 (2d Cir. 2001).  If the employer demonstrates a legitimate, non-discriminatory reason for the action, then "[t]he burden shifts . . . back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation."  <u>Id</u>.

"[A]lleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct." <u>Rivera v. Rochester Genesee Reg'l Transp. Auth.</u>, 743 F.3d 11, 25 (2d Cir. 2014).

B.     Protected Activity

The Town argues plaintiff failed to identify any protected activity.[7]

The Court agrees with respect to plaintiff's 2014 union grievance, her complaints to her union delegate John Luther, and her complaints regarding O'Connell and regarding the truck #333 incident with Connington, but disagrees as to the remainder of the activities that plaintiff proffers as protected.

1.     Not Protected Activities

Plaintiff's 2014 union grievance is not protected activity because those complaints are solely merit-based and do not refer to sex-based discrimination.  "[U]nion grievances that do not allege discrimination do not constitute protected activity within the meaning of Title VII." Delaney v. LaHood, 2009 WL 3199687, at *22 (E.D.N.Y. Sept. 30, 2009).

Similarly, plaintiff's complaints about harassing conduct by O'Connell and the truck #333 incident with Connington are not protected activity because they complain of general bullying and harassment that plaintiff does not claim are linked to or motivated by her sex.  See Eskenazi-McGibney v. Connetquot Cent. Sch. Dist., 84 F. Supp. 3d 221, 234 (E.D.N.Y. 2015) (plaintiff who was struck and verbally threatened did not allege a retaliation claim because he did not complain the bullying was on account of a protected characteristic).

Plaintiff also argues her complaints to John Luther, plaintiff's union delegate, comprise protected activity, but plaintiff has not proffered sufficient detail about the substance of those

---

[7]     The Court has discretion to consider arguments, such as the Town's argument here, that are made for the first time in a reply brief.  Ruggiero v. Warner-Lambert Co., 424 F.3d 249, 252 (2d Cir. 2005).  Because it is plaintiff's burden to make out a prima facie case for retaliation in the first instance, and engagement in protected activity is an element of a prima facie case for retaliation, the Court sees no prejudice to plaintiff in considering it.

complaints such that a reasonable factfinder could conclude they constitute protected activity. (Doc. #184-8 at 19–20) (testifying that plaintiff complained about the Lillo chainsaw incident and would "gripe about the job, some of the usual BS that goes on down there").

Accordingly, plaintiff's retaliation claims based on her 2014 union grievance, her complaints regarding O'Connell and the truck #333 incident with Connington, and her complaints to John Luther, must be dismissed.

### 2.   Protected Activities

By contrast, plaintiff has raised at least a genuine issue of material fact that she opposed sex-based discrimination in the following complaints such that they can be considered protected activities:  (i) plaintiff's September 12, 2014, unsigned letter because it alleges she was harassed by Connington because she was "the only woman" (Doc. #178-24); (ii) her April 5, 2018, union grievance regarding missed overtime opportunities on March 13, 2018, which explicitly states the Town's actions violated the union's collective bargaining agreement's anti-discrimination provisions; (iii) plaintiff's 2010 complaints to Friscoe about Ballard stalking her, because a reasonable factfinder could find allegations of "stalking" by a woman against her male supervisor comprise sex-motivated conduct; (iv) her verbal complaints to the General Foreman about being assigned a disproportionate amount of cleaning duties that were not assigned to male employees (Doc. #184-7 at 170–73), although she could not identify the timing of this complaint; and (v) plaintiff's written complaint on July 10, 2018, which claims that Lillo "said only men playing with half a deck would hit on [plaintiff]" (Doc. #178-40 at ECF 3).  Accordingly, drawing all inferences in plaintiff's favor, she has at least raised a question of fact whether these activities were protected.  See Meyers v. Medco Health Sols., Inc., 2012 WL 4747173, at *7–8

(S.D.N.Y. Oct. 4, 2012), reconsideration granted in part on other grounds, 2015 WL 15003217

(S.D.N.Y. Mar. 31, 2015).

In addition, although plaintiff does not identify it as such, her attorney's February 28,

2019, letter to the Town explicitly complains of retaliation and is clearly protected activity.

C.   Employer Awareness of Protected Activity

Here, the only protected activity for which plaintiff fails to raise a genuine issue of

material fact regarding the Town's awareness is plaintiff's complaint to Friscoe, her co-worker,

about being stalked by Ballard.  Unlike the other protected activities discussed above, which

were generally submitted in writing or spoken verbally to plaintiff's supervisors, plaintiff offers

no evidence that her complaint to Friscoe regarding Ballard's stalking was ever escalated to a

supervisor.  See Collette v. St. Luke's Roosevelt Hosp., 2002 WL 31159103, at *6 (S.D.N.Y.

Sept. 26, 2002).  Therefore, plaintiff has not offered evidence that the Town was aware of

plaintiff's stalking complaint.

Accordingly, any retaliation claim arising out her complaint to Frisco regarding Ballard's

stalking must be dismissed.

D.   Adverse Employment Action and Causation

Plaintiff contends she suffered the following adverse employment actions in retaliation

for her protected activities:  (i) she received the "Go-Girl" gift from DiZenzo; (ii) she was

physically assaulted; (iii) she was transferred to the Town Garage; (iv) she was transferred to less

desirable crews so she lost overtime opportunities; (v) Salvo complained about her road-

flagging; and (vi) she suffered an escalation of the alleged hostile work environment and discriminatory conduct.

Defendants argue plaintiff fails to raise a genuine issue of material fact that any of these retaliatory actions either constitute adverse employment actions or were caused by a protected activity.

The Court agrees, except with respect to the alleged physical assaults by Klein.

### 1.   Go-Girl Gift

The Court does not reach the question of whether the "Go-Girl" gift was an adverse employment action because plaintiff cannot establish it was caused by her engagement in protected activity.

That is, even assuming that plaintiff received the "Go-Girl" gift after April 29, 2016—when plaintiff signed the Settlement Agreement waiving her right to raise such claims—the gift would still precede all of the alleged instances of protected conduct for which the Court was able to identify a date.  See, e.g., Myers v. N.Y. Dep't of Motor Vehicles, 2013 WL 3990770, at *8 (Aug. 5, 2013).  And with respect to the alleged complaint about her cleaning duties—for which plaintiff could not recall a date—plaintiff fails to provide any other circumstantial or direct evidence from which a reasonable factfinder could infer retaliatory intent.

Accordingly, plaintiff's retaliation claims against the Town arising out of the "Go-Girl" gift must be dismissed.

### 2.   Alleged Physical Assaults

The Town argues plaintiff cannot establish the alleged physical assaults by Klein and Salvo were causally connected to protected activity.

The Court agrees with respect to Salvo's alleged assault, but disagrees with respect to Klein's alleged assaults.

As an initial matter, assault by a co-worker, as well as a supervisor, may "dissuade[] a reasonable worker from making or supporting a charge of discrimination," and may constitute an adverse employment action.  See Cortes v. City of New York, 700 F. Supp. 2d 474, 482 (S.D.N.Y. 2010).

However, plaintiff has proffered neither temporal or other circumstantial evidence, nor direct evidence, that the alleged assault by Salvo was caused by any protected activity.

On the other hand, the Court infers that plaintiff reported the alleged physical assaults by Klein during her July 23, 2018, interview with the Town Attorney, which occurred less than two weeks after plaintiff engaged in protected activity—namely, her July 10, 2018, written complaint.  Although the record does not reflect exactly when the alleged assaults occurred, drawing all inferences favorable to plaintiff, the close temporal proximity between her potential reporting of the incidents and her protected activity satisfies plaintiff's de minimis burden to raise a genuine dispute as to whether the alleged assaults by Klein were causally connected to her protected activity.

Accordingly, plaintiff's retaliation claims with respect to the alleged assault by Salvo must be dismissed, but her retaliation claim with respect to the alleged assaults by Klein may proceed.

3.   Transfer to the Town Garage

The Town argues plaintiff's transfer to the Town Garage was a voluntary transfer that cannot be an adverse employment action.

The Court agrees the Town is entitled to summary judgment with respect to the transfer, but because plaintiff fails to raise a genuine issue of material fact that the Town's non-discriminatory reasons for the transfer are pretext for discrimination.

Even assuming plaintiff can make out a prima facie case of retaliation based on transferring plaintiff to the Town Garage, the Town has demonstrated as a matter of law that it had a legitimate, non-discriminatory reason for the transfer:  to protect plaintiff from the crew she alleged tampered with vehicles she was driving.  Indeed, the record shows the Town transferred plaintiff to the Town Garage in consultation with plaintiff's attorney, and that she was offered the opportunity to transfer back into her position with the Highway Department once local police determined no tampering had occurred.[8]

Plaintiff's conclusory allegations that any finding by the Town or its police was solely a sham investigation to undermine her credibility is not sufficient to raise a genuine issue of material fact that this legitimate, non-discriminatory reason for transferring plaintiff was a pretext for retaliation.  Indeed, the only evidence plaintiff proffers to support this theory are brief, handwritten notes from a deputy Town Attorney that include the words "undermine her credibility."  (Doc. #184-5).  This scintilla of evidence is not sufficient to satisfy plaintiff's burden to show the legitimate nondiscriminatory reason offered by the Town for her transfer was pretextual and that discrimination was the cause of her transfer.  See Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 725–27 (2d Cir. 2010) (granting summary judgment on plaintiff's

---

[8]     The undisputed facts show the police and Town investigations concluded the two trucks were not tampered with, and plaintiff waived the opportunity to dispute these facts.  (See also Pl. Opp. at 18).  Therefore, to the extent that plaintiff still maintains a claim for retaliation against the Town with respect to those incidents, summary judgment is warranted.

Section 1981 discrimination claim when the only evidence of discrimination was a supervisor's remarks that she was "not the only one being discriminated against").

Accordingly, plaintiff's retaliation claims against the Town arising out of her transfer to the Town Garage must be dismissed.

        4.      Transfer to Less Desirable Crews

The Town argues plaintiff fails to raise a genuine issue of material fact that she was unfairly transferred out of her crew or that she lost overtime opportunities.

The Court agrees.

Plaintiff does not dispute she worked on the tree crew on March 13, 2018, and therefore, could not have suffered an adverse employment action in the form of lost overtime opportunities from being moved to a different crew that day.

Moreover, plaintiff does not meaningfully dispute that the Town had a legitimate, non-discriminatory reason to re-assign plaintiff instead of the other MEO IIs on the tree crew on March 9, 2018—namely, that plaintiff had less seniority and was not as skilled at operating the bucket truck. (Pl. 56.1 ¶¶ 29, 35).

Accordingly, plaintiff's retaliation claims against the Town arising out of plaintiff's transfer to less desirable crews must be dismissed.

        5.      Salvo's Complaint about Road Flagging

The Town argues plaintiff fails to raise a genuine issue of material fact that Salvo's March 13, 2018, complaint about plaintiff unsafely managing traffic at a work site comprised adverse action.

The Court agrees.

The record reflects that Salvo's complaint was addressed at a meeting during plaintiff's next working day among Salvo, plaintiff, and her union representative, and plaintiff was not penalized or reprimanded in any way for Salvo's complaint.  Thus, even if plaintiff could raise a genuine issue of material fact that the complaint was caused by a protected activity, Salvo's complaint had no effect on the conditions of plaintiff's employment such that it would dissuade a reasonable employee from pursuing further protected activity.

Accordingly, plaintiff's retaliation claims based on Salvo's complaint must be dismissed.

6.    Escalation of a Hostile Work Environment

The Town argues plaintiff has failed to raise a genuine issue of material fact that a hostile work environment "escalated" in response to protected activity.

The Court agrees.

The testimony cited by plaintiff does not support that the conduct escalated, but rather that it "continue[d]" and "never changed."  ((Doc. #184 ("Pl. Opp.") at 9).  Indeed, plaintiff claims the severe and pervasive sex-based discrimination in this case began soon after she commenced employment and continued until her transfer to the Town Garage.

When, as here, "timing is the only basis for the claim of retaliation," and "gradual adverse job actions [in this instance, the alleged hostile work environment] began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) (dismissing retaliation claim when gradual adverse employment actions began five months prior to the plaintiff's protected activity).  Therefore, plaintiff's claims of a hostile work environment cannot support a prima facie case for retaliation as a matter of law, because the alleged adverse employment actions began before plaintiff engaged in any protected activity.

22

Accordingly, plaintiff's retaliation claims against the Town based on a hostile work environment as an adverse employment action must be dismissed.

7.   <u>Lillo December 2018 Conduct and Connington Truck #333 Incident</u>

In her complaint, plaintiff alleges that Lillo's December 2018 conduct (<u>i.e.</u>, aggressively opening and closing the keybox and disposing of a coffee cup, whipping an air hose in the air, staring at plaintiff, and bumping her bookbag) was retaliation for her July 10, 2018, written complaint, and that Connington's rebuke of plaintiff for refusing to drive truck #333 was retaliation for her "complaints and union grievances."  (Doc. #1 ¶ 40).

"Title VII is not a general civility code."  <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 75 (2d Cir. 2001).  The above-referenced incidents may constitute rude and inappropriate conduct, but they are not sufficiently severe to dissuade a reasonable worker from making a charge of discrimination.  <u>See</u> <u>Smith v. NYC Health & Hosp. Corp.</u>, 2013 WL 3013641, at *6 (E.D.N.Y. June 18, 2013) (allegations that the defendant glared at the plaintiff, brushed her shoulder in a hostile and aggressive manner, and watched the plaintiff from a car were insufficient to constitute a materially adverse employment action).

Therefore, plaintiff's retaliation claims against the Town based on this conduct must be dismissed.

IV.   <u>Hostile Work Environment Claim for Connington Conduct</u>

The Town argues the Court should grant partial summary judgment on plaintiff's hostile work environment claims against the Town, only to the extent those claims are based on the alleged conduct by Connington with respect to the truck #333 incident.

The Court disagrees.

"To establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d at 20.  Although not every instance of harassment will support a claim for a hostile work environment, "whether an environment is hostile or abusive can be determined only by looking at all the circumstances" including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  Accordingly, "[t]he Title VII framework often requires courts to consider the workplace conduct of multiple employees and supervisors in determining whether the plaintiff has experienced a hostile work environment." Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014).

Here, plaintiff asserts hostile work environment claims against the Town based on the conduct of multiple employees and supervisors in the aggregate, not the conduct of Connington during this single incident.  Because determining whether the Town is entitled to judgment as a matter of law on plaintiff's hostile work environment claim requires considering Connington's conduct in the context of plaintiff's workplace as a whole, partial summary judgment based on his conduct alone is improper and must be denied.

**CONCLUSION**

The motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Plaintiff's Title VII and NYSHRL retaliation claims against the Town with respect to the alleged physical assaults by Klein shall proceed.  All other claims of retaliation against the Town are dismissed.

Plaintiff's hostile work environment claims against the Town with respect to the conduct of Tucker Connington shall proceed.

The Court will conduct a case management conference on **September 1, 2022, at 11:00 a.m.**, at which time counsel shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will make to settle this case.  The conference will be held at the White Plains Courthouse, Courtroom 620.

The Clerk is directed to terminate the motion.  (Doc. #175).

Dated: July 20, 2022
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge